David Miller, Respondent, *v.* Sarah F. Mead, Appellant.

Defendant entered into a contract with G. to sell to him certain land, G. agreeing to erect houses thereon, defendant. to make him certain advances as the work progressed. It was also agreed that the premises should be conveyed to G. as soon as the buildings were completed, he to execute a mortgage thereon to defendant for the purchase-money and advances. The contract contained a provision that in case a mechanic's lien was filed against the property it should be subsequent to the liens and claims of defendant. In an action to foreclose a mechanic's lien *held,* that the lien given by the Mechanic's Lien Law (Chap. 342, Laws of 1885), could not be defeated by the stipulation as against one not in privity with either of the parties to it and who, without notice thereof, had furnished labor or materials; and that the contract was proof of defendant's consent to the erection of the buildings and rendered her interest subject to the lien.

*Schmalz* v. *Mead* (125 N. Y. 188), distinguished and explained.

(Argued June 19, 1891; decided October 6, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 10, 1889, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This was an action to foreclose a mechanic's lien.

On May 25, 1887, the defendant owned in fee land in the city of New York extending from One Hundred and Twenty-seventh to One Hundred and Twenty-eighth streets, and bounded on the east by Madison avenue and on the west by a line drawn parallel with and thirty-five feet west of the avenue. On the date mentioned she and one Herman Gierke entered into a

written contract by which she covenanted to sell and he to purchase the premises for $70,000. Gierke also covenanted to complete, on or before October 1, 1887, six dwelling-houses, then begun on the south part of the lands, in a style specified in the contract and costing at least $6,000 each. The defendant covenanted to advance Gierke $21,000, payable by installments as the work progressed, to aid in the erection of the buildings. It was mutually covenanted that when the houses were completed the defendant would convey the land to Gierke, and that he, concurrently therewith, would give his bonds to secure the payment of the purchase-price ($70,000) and the $21,000 to be advanced, secured by mortgages on the premises. The contract contained the following provision: "And it is agreed that should any mechanic's lien be filed against the property herein described during the progress of said buildings or against any part thereof. * * * Such mechanic's lien * * * shall be subsequent to the liens and claims of the party of the first part (Sarah F. Mead), but in such cases or either of them it is agreed that all payments or advances due or to become due under this contract may, at the option of the party of the first part (Sarah F. Mead), be withheld until such lien or liens shall be removed and discharged of record, or said party of the first part may, at her option, apply such payments or advances to the payment and discharge thereof, or said party of the first part (Sarah F. Mead) may, at her option, in the case of a mechanic's lien, deposit an amount sufficient to cover said lien or liens, or give security under the statute and contest the same at the cost and expense of the party of the second part (Herman Gierke), and deduct the same from said payments or advances; and the said party of the first part (Sarah F. Mead), expressly reserves the right to make the said payments or advances, or any part of the said payments or advances, before they or either of them may be due and payable, or out of the order in which they or either of them may become due and payable."

On June 9, 1887, Gierke, with the assent of Sarah F. Mead, assigned the contract to Edward Grippentrog. On the 20th

of June, 1887, David Miller (the plaintiff) and Grippentrog entered into a written contract, by which Grippentrog contracted to furnish stone for the completion of the buildings for $9,060, under which, prior to January 24, 1888, the plaintiff furnished stone of the value of $1,500 and the price thereof not being paid, a lien was filed on the 24th of January, 1888, pursuant to chapter 342 of the Laws of 1885, to foreclose which this action was brought. Upon the trial the court found that the plaintiff had furnished under the contract stone used in the buildings of the value of $1,500, which was adjudged to be due, and a judgment was entered foreclosing the lien, with costs; from which the defendant appealed to the General Term, where it was affirmed; and thereupon the defendant appealed to this court.

Further facts are stated in the opinion.

*E. N. Taft* for appellant. In order to maintain the plaintiff's claim of lien upon Mrs. Mead's interest in the premises, the plaintiff must have furnished the labor and materials to the vendee with her consent. (Laws of 1885, chap. 342, § 1.)

*William E. Stewart* for respondent. The relation of owner and contractor did not exist between any of the parties to this action, within the provisions of the act of 1885. (*Rollins* v. *Cross*, 45 N. Y. 766; *Burkitt* v. *Harper*, 79 id. 273; *Otis* v. *Dodd*, 90 id. 336; *Gates* v. *Whitcombe*, 4 Hun, 137.) The present act makes the legal owner the owner until the deed has actually been delivered and recorded. (*Nellis* v. *Bellinger*, 6 Hun, 560; *Husted* v. *Mathes*, 77 N. Y. 388; *Riley* v. *Watson*, 3 Hun, 569; *Hackett* v. *Badeau*, 63 N. Y. 476; *Schmalz* v. *Mead*, 23 N. Y. S. R. 117; 34 id. 779.)

FOLLETT, Ch. J. It is provided by chapter 342 of the Laws of 1885 — the general Mechanics' Lien Law of this state — as follows:

"§ 1. Any person  *  *  *  who shall hereafter perform any labor or service, or furnish any materials which have been used, or which are to be used in erecting, altering or repairing

any house, * * * with the consent of the owner as here-
inafter defined, or his agent, or any contractor or subcontractor,
or any other person contracting with such owner to erect, alter
or improve, as aforesaid, within any of the cities or counties
of this state, may * * * have a lien for the principal
and interest of the price and value of such * * * mate-
rial upon such house * * * and upon the lot * * *
upon which the same may stand, or be intended to stand, to
the extent of the right, title and interest at that time existing
of such owner, whether owner in fee or of a less estate,
* * * or of the owner of any right, title or interest in
such estate, which may be sold under an execution." * * *

"In cases in which the owner has made an agreement to
sell and convey the premises to the contractor, or other per-
son, such owner shall be deemed to be the owner, within the
intent and meaning of this act, until the deed has been
actually delivered and recorded conveying said premises pur-
suant to such agreement." (§ 5.)

The parts of the statute above quoted have been recently
construed by the Court of Appeals in *Schmalz* v. *Mead* (125
N. Y. 188, which affirms 15 Daly, 223), the facts of which
were as follows: The defendant, the owner in fee of the land
(the same land involved in the case at bar), contracted, in
November, 1885, to sell and convey it to George Kuhn for an
agreed price, and to advance to the vendee a certain sum in
installments to enable him to erect buildings of a kind agreed
to thereon. The vendor covenanted that when the buildings
were completed he would convey the land and take the
grantee's bond, secured by a mortgage on the land, for the ·
payment of the purchase-price and the sum to be advanced
for building purposes. Under this contract the vendee entered
into possession and began the erection of the buildings, but
soon failed and abandoned his purchase. The vendor had
performed her part of the contract, and no advances were due
from her when the lien for materials furnished the vendee
was filed or foreclosed. The vendor defended the action to
foreclose the lien on the grounds: (1) That the contract of

sale and for the erection of buildings was not sufficient evidence of the owner's, vendor's, consent within the statutory meaning of "the consent of the owner" that the buildings be erected. (2) That only the interest of George Kuhn, vendee. and contractor, could be subjected to liens. (3) That the lien could attach only to advances due from her, if any, and not to her interest as vendor in the real estate. These defenses were overruled and the lien was held to attach and bind the vendor's interest in the realty. *Schmalz* v. *Mead* differs from the case at bar only in the fact that the contract of sale and for building did not contain the stipulation contained in the agreement under consideration and quoted in the statement of facts, that if any mechanic's lien was filed it should be subject to the lien and claim of the vendor. The defendant's relation to and interest in the land constituted her the owner thereof within the meaning of the word "owner" as defined in the fifth section of the Mechanics' Lien Law. (*Schmalz* v. *Mead, supra.*) And her estate could be subjected to the liens of persons furnishing labor or materials for the construction of buildings erected thereon with her consent. By the contract entered into May 25, 1887, between Mrs. Mead, then the owner of the fee, and Gierke, and by him assigned to Grippentrog with her consent, she not only agreed to sell and thereafter convey the land, but bound the vendee to build within a specified time six houses according to plans which had been agreed on, to cost not less than $6,000 each, she agreeing to advance $21,000 for the purpose of partly paying the cost of their erection; which contract was proof of her (the owner's) consent that the buildings be erected, and rendered her interest in the premises subject to such liens as might be filed for labor and materials furnished for the construction of the houses, unless in some way relieved from liability by the stipulation that any mechanic's lien should be subject to her interest in the property. (*Schmalz* v. *Mead, supra; Rollin* v. *Cross,* 45 N. Y. 766; *Husted* v. *Mathes,* 77 id. 388; *Burkitt* v. *Harper,* 79 id. 273; *Otis* v. *Dodd,* 90 id. 336.)

The stipulation in respect to the priority of liens did not destroy the owner's consent that the houses should be built, nor diminish its effect, nor did it lessen the absolute obligation resting upon the vendee to build them. It was not the design of the parties to accomplish any such results, but simply to circumvent the statute and defeat the rights given by it to persons furnishing labor and materials for the work, which design could not be accomplished by such a stipulation as against persons not in privity with either of the parties to it who should, without notice of the stipulation, furnish labor or materials for the work.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.