(11 Misc. Rep. 92.)

### REGAN v. BORST et al.

(Common Pleas of New York City and County, Special Term. January, 1895.)

1. MECHANICS' LIENS — IMPROVEMENTS MADE BY LESSEE—CONSENT OF LESSOR.
    Where the owner of premises, before the execution of a lease and independently thereof, but as an inducement to it, agreed that the lessee should make certain improvements, the cost to be deducted from the rent, the lessee becomes the principal contractor with the owner as to such improvements, and he is paid by the provision that the cost shall be deducted from the rent; and persons employed by the lessee to do the work acquire no lien as against the lessor.

2. SAME—RECITALS IN LEASE.
    A recital in a lease that the premises were intended for a certain purpose, for which they were then unsuitable, and that all improvements made by the lessee should become the property of the lessor on the expiration of the lease, is not a consent by the lessor that the lessee should make improvements, where the lease further provided that none should be made without the written consent of the lessor.

Action by John Regan against Christian E. Borst, the Hudson Realty Company, Paul Rosenthal, John F. Crotty, George Woerhle, Albert Woerhle, Simon E. Bernheimer, and Josephine Schmid to foreclose a mechanic's lien. Complaint dismissed.

Seymour & Hopkins, for plaintiff.
Lachman, Morgenthau & Goldsmith, for defendant Hudson Realty Company.
William Henry Knox, for defendant Crotty.

BOOKSTAVER, J. None of the parties other than those above named appeared in the action, which was brought to foreclose a

mechanic's lien on the premises on the northwest corner of Third avenue and 118th street. The only party really defending was the Hudson Realty Company, who was the owner of the premises in question. On or about the 12th day of April, 1893, this company. made a lease of the premises to the defendant Christian E. Borst for a term of five years from the 1st day of May, 1893, at a rental of $5,000 a year. Before the occupation of these premises by Borst, they had been used for a hat store. The lease contained the following provisions: (1) The building was to be used as a liquor store and hotel; (2) the rent was to be paid in equal monthly payments in advance, on the 1st day of each month, amounting to $416.66; (3) the company agreed to put the roof on the said premises in good condition, and the tenant agreed to keep the demised premises, both inside and out, in good order, condition, and repair; (4) the tenant agreed to comply with all present and future state and city building and sanitary laws, and all city ordinances and regulations of the board of health, or of any other department or authority of the municipality or of the government of the city of New York, during the term of the lease, at his own expense, and to replace all glass broken, with glass of equally good quality, at his own expense; (5) a further provision as follows: "It is further understood that at the expiration or other termination of this lease all improvements then on said premises are to be and remain the absolute property of the party of the first part, in the same manner as if the same had been made by it;" (6) a provision that said Borst would "not assign this lease, nor let or underlet the whole or any part of said premises, nor make any alterations therein, without the written consent of the said party of the first part, under the penalty of forfeiture and damages." Contemporaneous with the negotiation for the lease, Borst, the intending lessee, and the Hudson Realty Company, the owner, through its officers, had negotiations in relation to putting in a new store front; and it was finally agreed between them, before the lease was executed, and independently thereof, but as an inducement to it, that the lessee should be allowed to put in a new store front, for which the realty company would pay by making an allowance upon the lease. This is the only alteration which, in my opinion, from the evidence, was ever agreed to or consented to on the part of the landlord, and this was fully paid by making the allowance agreed upon. All of the other work done by Regan and Crotty was done under agreements with Borst. There is no claim that any express agreement for any of the other work was given by the company or its officers. There was no attempt made to show that any written consent was ever given by the landlord to any of these alterations or improvements; nor do I think the evidence offered by the plaintiff bears out their contention that the landlord, through its officers, ever consented to any of them. Nay, more, I am not convinced from the evidence that any of the officers of the company knew of the alterations and improvements that were made by Borst's direction until the work had been done. The testimony of the plaintiffs as to this is extremely vague and uncertain. It only goes to the extent of show-

ing that on two or three different occasions one or more of the officers of the company were at the place. It is even admitted that on one or more of these occasions the officers did not go into the building at all. On another occasion it is claimed that they did; but these officers, being produced, expressly testified that they did not see or know of any of the improvements being placed upon the building other than the store front. On this state of facts the Hudson Realty Company might, under certain circumstances, be liable to the plaintiff for putting in the store front; but I think the evidence shows that as to that work the landlord entered into an agreement with Borst to do that work, for which it was to pay in a certain way, and that therefore, as to that, Borst became the principal contractor with the owner, and as he was paid in the way provided for in that contract, before any lien was filed, the payment was made in good faith to Borst, and if he did not pay his subcontractor the company is not liable. This contract or agreement was entered into before the lease was executed, and independently thereof. It therefore stood by itself, and was to be performed according to its terms. But even if the relation of landlord and tenant existed, that does not exclude other relations between the parties relative to the same property. In Havens v. Power Co. (Sup.) 17 N. Y. Supp. 580 (affirmed at Sup. Ct. Gen. Term, 20 N. Y. Supp. 764), it was held that the assistance of the owner in the erection of a building upon his land, but as an agent of the tenant, was not alone sufficient to charge him with consent within the intent of the statute. The tenant in this case was pro hac vice the principal contractor, and after his claim for work was satisfied there was no basis for a lien.

There is no proof that the owner became liable under section 2 of the act, by reason of collusive payment for the purpose of avoiding the provisions of the act, or in advance of the terms of the contract. The argument that the company is in any event liable for $10, the difference between the amount it agreed to allow Borst and the amount he agreed to pay, is without foundation. If the principal contractor pays his subcontractor more than he receives from the owner, the latter's liability cannot thereby be extended beyond the contract price. As to the other alterations, the lease forbids them to be made on the demised premises without the written consent of the lessor, and, as before stated, no evidence of such consent was given. It cannot be said that the recital in the lease that the premises were to be used as a liquor store and hotel, coupled with their then unsuitable condition for such a use, and the latter clause reserving to the lessor the absolute property in all improvements upon the premises at the expiration or other termination of the lease, constituted a written consent, because such an interpretation would give to one portion of the written instrument an effect destructive of another in a case where there is no inevitable or scarcely an apparent conflict. The evident meaning of the lease is that the landlord therein gives consent that the property be used as an hotel and liquor store, but limits the extent to which its property shall be changed to adapt it to its new purposes by providing in advance

that such improvements shall become a part of the fee, but shall not be made unless expressly assented to in writing. Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251, and Miller v. Mead, 127 N. Y. 544, 28 N. E. 387, may be regarded as leading cases on one branch of the mechanic's lien law, but they do not involve the relation of landlord and tenant. In them vendors were held liable for work done on behalf of vendees where the deed was not recorded and the title was not to pass until the completion of the building. In Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154, it was held that the facts from which the inference of the consent may be drawn must be such as indicate at least a willingness on his part to have the improvements made, or an acquiescence in the means adopted for that purpose, with knowledge of the object for which they were employed. In Spruck v. McRoberts, 139 N. Y. 193, 34 N. E. 896, it was held that the consent of the owner to the erection of the building could not be implied from the fact that, knowing what the mechanic was doing, he failed to forbid or prevent him.

In Burkitt v. Harper, 79 N. Y. 273, the statute, which was the Queens county statute of 1862, was somewhat different from the present mechanic's lien law, as it permitted a lien for work done "by virtue of any contract with any person permitted by the owner of such land to build, repair," etc., and in both the Burkitt Case and the case of Otis v. Dodd, 90 N. Y. 336, the lessees, as a part of the consideration of the letting, expressly agreed to erect the buildings; they were entire buildings, and were even to be re-erected by the tenant in case of destruction by fire. In the lease given in this case, the fire clause is the ordinary one, and this case is broadly distinguished from the cases last cited by the failure of proof to show knowledge even, not to say anything of consent. In Havens v. Power Co. (Sup.) 20 N. Y. Supp. 764, the court says:

"It does not seem to us that it could possibly have been the intention of the legislature to make the owner of land which he has leased for a long term of years liable for improvements made upon this land, for purposes of trade, by his tenant. The mere fact that he may know that the tenant contemplates making certain improvements, or applying the property to certain purposes, certainly cannot make the owner liable for the moneys expended by his tenant in the doing of such work."

See, also, Ottiwell v. Muxlow (Com. Pl. N. Y.) 6 N. Y. Supp. 518; McClintock v. Criswell, 67 Pa. St. 183.

In addition to what has been said, attention may be called to the fact that the owner sought to be charged in this case was a corporation, which could only act through its officers, and that the duties and powers of none of those officers were proved upon the trial. As to the secretary, if he knew of all of these improvements, and consented thereto, I do not think I could hold, in the absence of proof, that he could bind the company. And so, too, of the treasurer, because I do not think it can be contended that such officers could make contracts for improvements of the character under consideration without express authority from the corporation so to do, as it cannot be implied from the nature of the duties pertaining to such officers. The power of the president of the company to make such contracts may perhaps be presumed, but in this case it

is shown conclusively that he had no knowledge, and therefore could give no consent, within the meaning of the statute. Under all the facts of this case, I think, therefore, after a careful consideration of the facts and the argument of counsel, that the complaint should be dismissed, with costs to the defendant the Hudson Realty Company.