STEEVES et al. v. SINCLAIR et al.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

1. MECHANICS' LIENS—MISTAKE IN NAME.

Where a mechanic's lien was filed against the owner of property on which a building had been erected by a lessee, the failure to state the correct name of the person for whom the materials had been furnished and the labor performed would not invalidate the lien.

2. SAME—TIME FOR FILING—LIENABLE AND NONLIENABLE ITEMS—TACKING.

. A mechanic's lien claim consisted of three items, two of which could not properly be included in the lien, because more than 90 days had elapsed since the completion of the contract under which they were rendered, and the third of which was for work performed within 90 days previous to the filing of the lien. The lien notice admitted the payment of more than the contract price of the two nonlienable items, and the surplus was applied on the third item by the referee. Held, that the lienor had not attempted to extend the time of contracts against which the statutory period had run by tacking them to subsequent contracts within the time, and hence the lien for the last contract item was valid.

3. SAME—IMPROVEMENTS BY LESSEE—LIABILITY OF OWNER.

The owner of land made a lease, and agreed to sign a mortgage to enable the lessee to secure a loan of $3,000 on the property, which sum was afterwards increased by agreement to $3,500. The lessee agreed to make improvements costing not less than $5,000, which were to revert to lessor at the expiration of the lease. Held, that the owner's liability for materials and labor furnished was not discharged by making such loan, nor limited to the amount loaned, since he knew the amount to be expended, and had impliedly consented to be responsible for its payment by agreeing to the erection of the building on his land.

Appeal from special term, New York county.

Action by John F. Steeves and others against Margaret Sinclair and others to enforce three mechanics' liens. From a judgment on an undertaking given to discharge the liens, defendant Charles Siedler and his sureties appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Albridge C. Smith, for appellants.

Geo. W. Stephens, for respondents.

HATCH, J. This action was commenced to foreclose three mechanics' liens in one action,—one filed by Ephraim C. Gates (since deceased), John F. Steeves, Henry H. Barnard, and Bradley L. Eaton, partners under the firm name and style of Church E. Gates & Co., for

$1,618.83; one filed by Sandy M. Pasquale & Son, for $489.25, assigned to Barnard, one of the plaintiffs; and one filed by Frank Zanetti, for $127.50, also assigned to Barnard, against Margaret Sinclair, Sarah Van Schaick, and Charles Siedler. After the trial had commenced the plaintiff Ephraim C. Gates died, the cause of action surviving to the other members of the firm, who are now the plaintiffs herein. During the course of the trial the defendant Siedler, who was the owner of the premises against which the liens were filed, bonded the lien in pursuance of the provisions of the statute, his sureties being Amedee Spadone and Henry M. Keasbey, who joined with the said Siedler in the undertaking required by law to discharge the three liens, and they were accordingly discharged of record. The sureties were then brought into the action as defendants by a supplemental summons and complaint, by which a personal judgment against the sureties is demanded for the amount of the several liens. The referee found in favor of the plaintiffs, holding that the liens were good and subsisting liens upon the fee of the land, and directed judgment against the defendants Siedler, Spadone, and Keasbey for the amount of the liens, with interest and costs. Judgment was entered accordingly, and from such judgment this appeal is taken by such defendants.

The principal question involved in the appeal is whether or not the defendant Siedler consented to certain erections made upon his premises by the defendant Margaret Sinclair or the defendant Sarah Van Schaick, within the meaning of the statute (chapter 342, Laws 1885) under and pursuant to which the liens were filed, and for the erection of which the lienors furnished materials and performed labor and services. On the 2d day of June, 1894, the defendant Siedler, who owned the premises described in the complaint and notices of lien, made a lease to the defendant Sarah Van Schaick for a term of 10 years, at a rent of $300 per annum, payable quarterly in advance. It was provided in the lease that, in case of default in any of the covenants therein contained, it should be lawful for the lessor to re-enter the premises, to remove all persons therefrom, and to declare the lease and agreement null and void. The lease also contained the following provisions:

"And whereas, the said party of the second part desires and hereby agrees to erect buildings and improvements upon the said property to cost at least five thousand (5,000) dollars, and as she desires to procure a loan of three thousand (3,000) dollars on a part of the said property known as lots 1,682, 1,683, 1,684, and 1,685, to be applied to the erection of such buildings and improvements: Now, therefore, to enable her to do so, and because the title to the said property be vested in the said party of the first part, and in consideration of the fact that said buildings and improvements will revert to the party of the first part at the termination of this lease, he agrees that he will sign a bond and mortgage in her behalf to enable her to raise the sum of money in question for the purpose of fully completing the buildings and the discharge of all liens, if any. But it is provided that she shall also sign such bond so as to make her jointly liable with the said party of the first part in case there should be a deficiency in foreclosure proceedings. The said party of the second part agrees to submit plans of the buildings and structures to the said party of the first part, and they are to be approved by him, and the buildings are to be constructed in conformity thereto. And the said party of the second part further agrees that at the expiration of this lease all the buildings, struc-

tures, and improvements of every kind. name, and nature which she shall cause to be erected on the said premises shall revert to and belong to the party of the first part, unless the same shall be acquired by the said party of the first part at an earlier date, by reason of a foreclosure of the said mortgage, or by reason of abandonment of the premises by the said party of the second part, or any forfeiture of this lease in consequence of any violation of any of the covenants thereof."

The lease further provided that the lessee should have the privilege of purchasing four of the lots included in the lease within three years from the date of the lease, but in case she availed herself of the privilege she should become solely responsible for the $3,000 mortgage, and should discharge the same at her own cost and expense.

It appears that the lessee, Mrs. Van Schaick, was a mere trustee for the benefit of the defendant Margaret Sinclair. She had no beneficial interest whatever in the lease, holding it solely for the benefit of Mrs. Sinclair. Upon the premises mentioned in the lease the defendant Margaret Sinclair proceeded to erect a hotel, for which she purchased from the plaintiffs the lumber and timber for the price of which their said lien was filed, and in the erection of which the said lienors M. Pasquale & Son and Zanetti performed labor and services for which their respective liens were also filed. The lease and agreement of June 2, 1894, was modified by increasing the mortgage from $3,000 to $3,500. The mortgage was executed for that sum, in performance of the contract, and the proceeds thereof turned over to the defendant Margaret Sinclair. At the time of the execution of the mortgage the building was substantially completed. The defendant Siedler alleged in his answer, as a separate defense, that he performed his contract contained in the lease of June 2, 1894, in making the loan of $3,500 as therein provided for, and by reason thereof the premises are discharged of the liens sued on in this action.

It is claimed by the defendant that the liens assigned are not valid, for the reason that they were filed against William Sinclair, as the party for whom the labor was performed and the materials furnished, instead of against Margaret Sinclair. This objection cannot avail. Failure to state the true name of the owner or contractor in the lien, by express provision of statute, does not affect the validity of the lien. Gass v. Souther, 46 App. Div. 256, 61 N. Y. Supp. 302. The name of the owner in this lien is correctly given, and he is the only person, aside from his bondsmen, who is affected thereby. The Pasquale & Son lien was filed against Siedler as owner, and William Sinclair as the party to whom materials were furnished. It is urged against this lien that it was not filed in time; that the lienor resorted to "tacking," i. e. bringing in contracts or day's work against which the statutory period had run, by tacking them to subsequent contracts or work, so as to extend the time for filing the lien as to previous matters. There are three items claimed for in the notice: First, digging cellar and building foundation at a contract price of $210; second, plastering at an agreed price of $474; and, third, services of wagon, team, and men,—the total price of all such labor being $739.25. It admits payment of $250, and claims for balance of

$489.25. This lien was filed October 23, 1894. The first contract was completed in May, 1894. The last item for grading was on July 18, 1894. The plastering was finished in the latter part of August, 1894. The first two items could not properly be included in the lien, because more than 90 days had elapsed since the completion of the contract and the last item of work. But the agreed price of the last job was $494. This was not finished until the last part of August, and the lien was filed before the expiration of 90 days from the date of finishing. The referee has allowed on this claim $489.25, evidently crediting the $250 paid on the two prior contracts, and applying the $5 overplus upon the last one. It is thus apparent that no resort was had to "tacking," and the lien for the last contract was valid.

The most important question which the case presents is whether the defendant Siedler, as owner, consented to the erection of the buildings under such circumstances as bring him within the terms of the statute. The cases are numerous which hold that where the owner makes a lease, with the agreement that the tenant shall make improvements, which are to become the property of the landlord at the expiration of the term, there is an implied consent of the owner to furnish necessary labor and materials for such improvements. Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251, and Miller v. Mead, 127 N. Y. 544, 28 N. E. 387, 13 L. R. A. 701, sufficiently support this principle. In these cases there was an agreement whereby it was known to the owner that the improvements would be made, and from this fact the consent was implied. In the absence of such an agreement there is no such implication, and the consent must be either expressly given, or implied upon proof of facts which authorize its inference. Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154. In the absence of such an agreement or proof of circumstances from which it can be implied, no lien attaches as against the owner. As is pointed out by Judge Follett in Vosseller v. Slater, 25 App. Div. 368, 49 N. Y. Supp. 478, any other rule might "improve the vendor out of his estate." This case was affirmed on appeal. 163 N. Y. 564, 59 N. E. 1127. If the vendor is only made liable upon his agreement, express or implied, it would seem to follow, as a logical sequence, that he may place a limit upon his liability. And we have no doubt that, if notice of such limitation be brought home to the material man, no lien would attach in excess of such amount. Under such circumstances, the lienor could not be misled to his prejudice, and no equities would arise in his favor. Nothing that is said in Schmalz v. Mead, supra, conflicts with this rule. In that case the court simply gave effect to the agreement under which the owner contracted to sell the land, and, as no limitation was shown to exist which was called to the attention of the material man, the mere specification of the amount which was to be advanced did not overcome the implied agreement which the statute raised. The later cases which we have cited seem to hold that it is still within the power of the owner to limit his liability. It is not necessary, perhaps, that we determine this question in this case, as it does not seem to be really involved. In the present case the lease presents

the same question as was found present in the Schmalz Case. The lease in the present case limits the sum which was to be advanced for the purpose of erecting the buildings. It in no wise assumes to limit the sum to be expended to that amount, and, while the material man had notice of the terms of the lease, yet we think that it alone was not sufficient to limit the liability of the owner, or overcome the presumption which the statute raises that the owner consented, and such seems to be the express doctrine announced in the Schmalz Case. Besides, by the express provisions of the lease, it contemplated that the buildings would cost $5,000 to erect. So that the owner had actual notice of the amount which it was proposed to expend, and cannot, therefore, insist that the material man be prejudiced because he furnished beyond the amount of the advance, as it was to be expected that this would be done.

If these views are correct, it follows that the judgment should be affirmed, with costs. All concur.