FINE v. DYKE BROTHERS.

Opinion delivered December 5, 1927.

1. MECHANICS' LIEN—ESTOPPEL.—No estoppel arose against an unpaid vendor, who did no affirmative act to induce a lien claimant, furnishing building materials to a purchaser, to advance the credit upon which the lien was claimed.

2. MECHANICS' LIEN—FURNISHING MATERIALS TO PURCHASER IN POSSESSION.—Where plaintiffs furnished building material to a purchaser in possession under a contract to purchase land, and later, upon purchaser's default, the vendor declared the contract canceled, the plaintiffs had no right to an absolute and paramount lien against the building repaired with materials and land itself as against the vendor, who was in position of holder of an equitable mortgage.

3. MECHANICS' LIEN—BURDEN OF PROOF.—In suit by parties furnishing building materials to a purchaser in possession under a contract to purchase land to foreclose their mechanics' lien, where the vendor had declared the contract of sale to the purchaser canceled, the burden was on plaintiffs to prove that the material went into a new building, which could be removed from the land, since they had the burden of proving facts entitling them to a lien.

4. MECHANICS' LIEN—SUBJECTING CASH DEPOSIT.—Where plaintiffs furnished building materials to a purchaser in possession under a contract to purchase land, and the vendor later declared the contract canceled and sold the land to another who made application for a loan, and the vendor furnished cash bond to lender to indemnify it against the plaintiffs for a lien, the court, properly refusing to declare a lien on the land or building, erred in subjecting a cash deposit, since the purpose of the cash bond was to indemnify the lender, the money belonging to the vendor, who was not liable for the debt.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland*, Chancellor; reversed on appeal, affirmed on cross-appeal.

*Warner, Hardin & Warner*, for appellant.

*James B. McDonough*, for appellee.

SMITH, J. On March 1, 1920, J. H. Fine owned a five-acre tract of land, which he contracted to sell to C. H. Law for the sum of $1,500, of which $35 was cash in hand paid and the balance was to be paid in monthly installments of $35 each, all evidenced by the notes of

Law to the order of Fine, and bearing interest at the rate of eight per cent. per annum. The contract of sale provided that the title should remain in Fine until the consideration had been fully paid, and that, if Law should default in his payments, or any of them, Fine should have the option of declaring the contract void, and that "all sums paid thereon shall be forfeited to the said party of the first part as rent for said property, and as liquidated damages by reason of his possession of the same, and the said party of the first part shall be entitled to immediate possession of the said property, which the said party of the second part hereby agrees peaceably to yield." It was further provided in the contract of sale that if and when Law had made all the payments as agreed, Fine should convey the land to him by warranty deed.

Upon the execution of this contract and the payment of the $35 as there recited, Law took possession of the land, and he soon thereafter contracted with Dyke Brothers for certain material to be used in repairing an old building on the land which could not be occupied without the repairs. Dyke Brothers furnished building material to the value of $169.42, which Law used in repairing the building. Fine was aware of the fact, but was not a party to that contract. Law made two of the deferred monthly payments, and then defaulted, and failed thereafter to make any other payment. The building material was not paid for, and Dyke Brothers brought this suit, and alleged that they are entitled to a lien upon the said building and upon one acre of land surrounding it, and prayed that this lien be declared and foreclosed.

After Law made default, Fine elected to declare the sale contract void, and took possession of the land. After doing so, he sold the land to C. W. Dameron, who made application for a loan on the security of the land to a building and loan association. The building and loan association declined to make the loan unless and until Fine had indemnified it against the claim of Dyke Broth-

ers for a lien. This Fine did by making a cash bond in the sum of $175. Service was had upon Law by the publication of a warning order, and he made no appearance in the case. Fine answered, and set up the contract of sale above referred to, and alleged default thereunder, and denied that Law had authority to create a lien for any material used in the repairs or for other purposes.

The court denied the claim for a lien against the land, but adjudged that the plaintiffs were entitled to a lien on the $175 in the hands of the building and loan association, and directed the association to pay the money into the registry of the court in satisfaction of the plaintiffs' claim. Fine excepted to that order, and has appealed, and Dyke Brothers have perfected a cross-appeal from the order refusing to declare a lien in their favor on the improvement and the adjacent ground.

The facts in the case of *Gunter* v. *Ludlam,* 155 Ark. 201, 244 S. W. 348, are very similar to those of the instant case. Gunter and Pate owned a lot in the city of Fort Smith, which they contracted to sell to Ludlam for a payment in cash and other payments to be made monthly. A clause of the contract provided for the acceleration of the maturity of all installments in the event of default in the payment of any installment. Ludlam erected a house on the land with material purchased from parties to the litigation, who claimed liens on the property for the value of their material. Suit was begun by Pate and Gunter to foreclose their lien as vendors for the unpaid purchase price, and Gunter also claimed a mechanic's lien by way of subrogation to the rights of the person who had built the foundation for the house. The court rendered a decree against Ludlam in favor of Pate and Gunter for the amounts claimed by them, and also a decree in favor of each of the parties asserting liens for labor and material, and declared the liens of those claimants superior to that of the vendors. This court, on the appeal from that decree, held that it was error to subordinate the lien of the vendors to that of the materialmen, as the vendors, having placed Ludlam

in possession under a contract of sale, were in the attitude of vendors who had conveyed the property and had accepted a mortgage back as security for the debt.

What was there said on the question of estoppel is also applicable here. It was there said that mere knowledge on the part of the vendors that labor and material were furnished for the construction of the building, or even their consent thereto, in the absence of some affirmative act which indicated a willingness to subordinate their claim to that of the subsequent lienors, was not sufficient to operate as an estoppel. It was there further said:

"Ludlam was in possession of the property as a mortgagor, and had an alienable interest upon which he could create a lien, therefore his construction of the building and the creation of a lien for labor and material was referable to his own interest in the property, and acquiescence on the part of appellants as mortgagees did not constitute such an affirmative act as would operate as an estoppel to the claim of a superior lien."

The doctrine of that case was reaffirmed in the case of *Judd* v. *Rieff,* 174 Ark. 362, 295 S. W. 370, which is also similar to the instant case under the facts. It was there said:

"The effect of the sales and purchase contract under review, in equity, was to create a mortgage in favor of the vendor, Mrs. Judd, to secure the purchase money. Wicker, in effect, became the vendee and equitable owner and mortgagor and Mrs. Judd the mortgagee. *Fairbairn* v. *Pofahl,* 144 Ark. 313, 222 S. W. 16; *Gunter* v. *Ludlam,* 155 Ark. 201, 244 S. W. 348. Section 6933 of C. & M. Digest provides that every person for whose immediate use, enjoyment or benefit a building, erection or other improvement shall be made shall be concluded by the words 'owner or proprietor thereof.' The above language is sufficiently comprehensive to include, and does include, the vendee in possession under a contract of purchase such as that under review. Wicker was the equitable owner or proprietor, and in possession of the

lot in controversy at the time he purchased the materials from Rieff which were used in the building of a garage. The purchase and use by Wicker of the materials in the building of a garage on the lot in controversy gave to Rieff the right to perfect a lien under the statute on the lot to the extent of Wicker's interest therein. See *Gunter* v. *Ludlam, supra;* 27 Cyc. 29, 18 R. C. L. 885.''

Dyke Brothers do not ask that their right to a lien be perfected to the extent of Law's interest in the land; on the contrary, the relief asked is that it be adjudged that they are entitled to a lien on the building into the repair of which their material entered and upon an acre of land surrounding the building. The court properly denied this relief.

Dyke Brothers insist, on their cross-appeal, that there was no vendor's lien in favor of Fine, as opposed to their claim for a lien as materialmen, for the reason that Fine has declared the contract void, and did not do this until after the material had been furnished. In reply to this argument it may be said, first, that Fine could not declare the contract void until Law had defaulted in his payments. The cases of *Gunter* v. *Ludlam* and *Judd* v. *Rieff, supra,* hold that no estoppel arises against the vendor who does no affirmative act to induce the lien claimant to advance the credit upon which the lien is claimed, and Fine did no affirmative act.

It is true, as cross-complainants insist, that Fine has declared the contract of sale canceled, but Law's rights are derived from the contract, and these rights were only those of a vendee in possession who had given a mortgage back as security for the debt, and, as was decided in the cases cited, the holder of this equitable mortgage has a lien superior to that of a lien claimant whose rights are derived from a contract with the equitable mortgagor, and, as we have also herein said, Dyke Brothers are not asking relief against Law's interest, but claim an absolute and paramount lien against the improvement and the land itself, but this, under the cases herein cited, they do not have.

In the case of *Judd* v. *Rieff, supra,* it was said that "In *Imboden* v. *Citizens' Bank,* 163 Ark. 615, 260 S. W. 734, we held that, under § 6909, *supra,* a mechanic's or materialman's lien is superior to a prior mortgage only on a separate building constructed with the labor and material furnished or such addition as is separable from the original building without injury thereto."

Cross-appellants insist a lien should be declared in their favor on the building, for the reason that the testimony does not show that the improvement into which their material went is not separable from the original building without injury thereto. In answer to this contention it may be said, first, that we do not so understand the testimony. The material did not go into a new building separable from another which could be removed without injury to the existing building. On the contrary, we understand that the material was used in the repair of an old building, and was not a separable improvement. But, if the testimony does not establish this fact one way or the other, as cross-appellants insist it fails to do, they have to that extent failed to make the proof required, for the burden is on them to prove facts entitling them to a lien. *St. L. I. M. & S. Ry. Co.* v. *Love,* 74 Ark. 528, 86 S. W. 395; *Royal Theater Co.* v. *Collins,* 102 Ark. 539, 144 S. W. 919; *Langston* v. *Matthews & Lawton,* 117 Ark. 626, 173 S. W. 397; *Hoffman* v. *McFadden,* 56 Ark. 217, 19 S. W. 753, 35 Am. St. Rep. 91; *Buckley* v. *Taylor,* 51 Ark. 302, 11 S. W. 281.

While the court was correct in refusing to declare a lien on the land or the building, we think it was error to declare the cash deposited with the building and loan association as a bond subject to the demand of the lien claimants. The purpose of the cash bond was to indemnify the building and loan association. The bond was not executed for the benefit of Dyke Brothers, and they were not parties to it. The money belonged to and was deposited by Fine, and it is certain the statute gives no lien on money. To subject money belonging to Fine to the payment of the debt the court has, in effect, held

Fine liable for the debt, and there is no authority for so holding.

It follows therefore that the decree denying a lien against the land and the improvement should be affirmed, and the portion thereof subjecting the cash bond to the payment of the debt should be reversed, and it is so ordered.