MORRILTON LUMBER COMPANY *v.* GROOM.

Opinion delivered March 5, 1928.

1. MORTGAGES—PRIORITY OF MATERIALMAN'S LIEN.—Under Crawford & Moses' Dig., § 6909, providing that a lien for materials shall attach to buildings for which they were furnished in preference to a prior mortgage existing on the land before the buildings were erected, *held* that, where a building was erected on mortgaged land, half from materials derived from old buildings on the lands and half from new materials furnished by the materialman, the lien of the mortgage was superior to the materialman's lien.

2. MECHANICS' LIEN—ENFORCEMENT OF MATERIALMAN'S LIEN.—A materialman's lien on a building can be enforced as superior to a prior lien on the land, under Crawford & Moses' Dig., § 6909, only by sale of the building as separate and distinct from the land.

3.  MECHANICS' LIEN—PRIORITY OF MATERIALMAN'S LIEN.—Crawford & Moses' Dig., § 6909, providing that a materialman's lien shall attach to buildings for which materials were furnished in preference to a prior lien on the land, applies only where there is some independent structure erected on the land out of materials furnished for that purpose.

4.  MORTGAGES—ESTOPPEL.—A mortgagee is not estopped to claim a superior lien on a building as against a materialman, where the mortgagee had knowledge that the mortgagors were using material derived from old buildings on the mortgaged land together with new materials furnished by a materialman in erecting a new building, since mere silence would not amount to an estoppel.

Appeal from Conway Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

STATEMENT OF FACTS.

Morrilton Lumber Company brought suit in equity against Grover H. Webb, L. M. Sharp and Elvie Reynolds to establish a mechanics' lien upon certain lots in Morrilton, Arkansas, in the sum of $599.82. Charles Groom was allowed to intervene and claim a prior lien on the lots by virtue of a mortgage executed to him by the defendants.

On the 23d day of January, 1925, Charles T. Groom executed a warranty deed to Grover H. Webb, L. M. Sharp and Elvie Reynolds to lots 7, 8 and 9, in block 4 of Moose's Addition to the town of Morrilton, Arkansas. The consideration as recited in the deed was the sum of $4,500, evidenced by three promissory notes for $1,500 each, due respectively on November 1, 1925, 1926, and 1927, each bearing interest from date until paid at the rate of eight per cent. per annum. At the time of the execution of the deed there were on the land several houses. After the execution of the deed the owners of the property tore down the houses and used the lumber, together with other lumber which they purchased from the plaintiff, in the erection of a storehouse and barn on said lots. The property was estimated to be worth $2,000 more in its changed condition. The value of the lumber purchased from the plaintiff was $599.82, and the lumber taken from the dwelling-houses which were torn down was of about the same value. The old and new lumber

was mixed up and used in the construction of the new buildings.

The chancellor found the issues in favor of the intervener, Charles T. Groom, and granted him a decree of foreclosure of his mortgage, because, by the terms of the mortgage, all of the notes had become due because of the mortgagors' failure to pay any of the notes. It was decreed that the mortgage lien of Charles T. Groom was prior and paramount to the materialman's lien of the Morrilton Lumber Company, and that the proceeds of sale should be applied, first, to the payment of the indebtedness of Charles T. Groom, and the remainder, if any, should be applied, first, to the payment of the judgment claim of the Morrilton Lumber Company, and the residue, if any, to Grover H. Webb, Elvie Reynolds and L. M. Sharp. To reverse that decree Morrilton Lumber Company has duly prosecuted an appeal to this court.

*Strait & Strait,* for appellant.

*J. H. Reynolds* and *E. A. Williams,* for appellee.

Hart, C. J., (after stating the facts). It is conceded that the lien of Charles T. Groom on the lots is superior to the materialman's lien of the Morrilton Lumber Company, but it is claimed the new house and garage which were constructed on the lots from the old lumber from the houses which were torn down and the new lumber which was purchased from the Morrilton Lumber Company is subject to the lien of the lumber company, and that the buildings may be taken off and sold and the proceeds applied equally towards the satisfaction of the judgment of the plaintiff, because the value of the old and new lumber was about the same. In making this contention, counsel for the plaintiff rely upon the provision of § 6909 of Crawford & Moses' Digest as construed in *Judd* v. *Rieff,* 174 Ark. 362, 295 S. W. 370. In that case it was held that a lien for materials for building a garage, furnished to a purchaser in possession under a land contract prior to the vendor's exercise of an option to declare the contract rescinded, was superior to the vendor's lien on the garage, under Crawford & Moses'

Digest, § 6909, providing that a materialman's lien on specific improvements shall be superior to prior incumbrances on the land.   Section 6909 of the Digest reads as follows:

"The lien for the things aforesaid, or work, shall attach to the buildings, erections or other improvements for which they were furnished or work was done, in preference to any prior lien or incumbrance or mortgage existing upon said land before said buildings, erections, improvements, or machinery were erected or put thereon, and any person enforcing such lien may have such building, erection or improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter; (a) provided, however, that in all cases where said prior lien or incumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements or buildings, the said lien shall be prior to the lien given by this act."

Prior to the passage of this act it had been held that a mortgage lien was superior to a materialman's lien. *Monticello Bank* v. *Sweet,* 64 Ark. 502, 43 S. W. 500.

We are of the opinion that the chancellor correctly held that the lien of the mortgagee, Groom, was superior to that of the plaintiff as materialman.   The statute in question gives one who purchases materials a new right, and, along with the superior right, gives him a remedy for the enforcement of it.   The statute in express terms declares that the lien of the materialmen shall attach to the building for which the materials were furnished in preference to any prior mortgage existing upon the lands before said buildings were erected, and that any person enforcing such lien may have the building sold under execution, and the purchaser may remove it within a reasonable time thereafter.

According to our former decisions, if a new building had been erected entirely out of materials furnished by the plaintiff, its lien might have been enforced against such building, and the purchaser would have had the

right to remove it from the lots in a reasonable time, notwithstanding there was a prior mortgage on the lots. The lien can be enforced as a prior lien only by a sale of the building as a separate and distinct entity from the land. Such priority of lien exists only when a new building has been put upon the land subsequent to the execution of the mortgage, and the one claiming a prior lien for materials furnished must have furnished the materials for the erection of an entirely new building. To hold otherwise would put it in the power of the mortgagor to impair the security which he had given to the mortgagee. The houses were on the lots when the mortgage was executed, and constituted a part of the realty. Indeed, in many cases houses might constitute the most valuable part of the mortgage security. For the reason that the mortgage includes the houses situated on the lots as well as the lots themselves, the mortgagor would have no right to tear down the buildings without the consent of the mortgagee, and use them, in whole or in part, in making new improvements upon the mortgaged property.

As we have already seen, the materialman has no rights except as given him by the statute, and the statute only applies where there is some independent structure erected on the land out of materials furnished for that purpose. *Getchell & Tichenor* v. *Allen*, 34 Iowa 559; *James River Lumber Co.* v. *Danner*, 3 N. D. 470, 57 N. W. 343, and cases cited; *Thorpe Block Savings & Loan Assn.* v. *James*, 13 Ind. App. 522, 41 N. E. 978, and cases cited; Rockel on Mechanics' Liens, p. 388, § 148a; and Boisot on Mechanics' Liens, p. 149, § 150.

Counsel for plaintiff rely upon *Wimberly* v. *Mayberry*, 94 Ala. 240, 10 So. 157, 14 L. R. A. 305. This is an Alabama case, by a divided court; and, after reading carefully the majority and minority opinions in the case, we have reached the conclusion that the dissenting opinion is more in accord with our sense of reason and justice. The materialman had notice of the mortgage, and knew the purpose for which the materials were furnished. He was bound by the language of the statute, and could see

from its terms that it only contemplated giving him a lien superior to that of a prior mortgagee where a new building was erected out of materials furnished by third persons, and not where the new improvement was made out of old materials and new ones so intermingled that there could be no separation and sale of the building erected out of the new material.

It can add nothing to the rights of the materialman that the mortgagee knew that the mortgagor had torn down the old building and was using the lumber together with new lumber furnished by the plaintiff in the erection of a new building. His rights as mortgagee could only be defeated by some act of waiver or estoppel on his part, and this could not be accomplished by mere knowledge on his part that the mortgagor was using the old materials in connection with new ones in the erection of a building. The mortgagee, in order to be estopped, must have given his consent to the mortgagor, or have been guilty of conduct which would have estopped him from asserting his mortgage. Mere silence would not amount to estoppel, and it is not claimed that he expressly or by necessary implication waived any of his rights under the mortgage.

Therefore the decree will be affirmed.