PEOPLE'S BUILDING & LOAN ASSOCIATION *v.* LESLIE
LUMBER COMPANY.

Opinion delivered May 11, 1931.

*J. S. Utley* and *T. M. Hooker,* for appellant.

*Rowell & Alexander,* for appellee.

MEHAFFY, J. The appellant, People's Building &
Loan Association, on the 25th day of July, 1929, entered
into a contract with J. G. Ish, Jr., to sell the west half of
lot 4, block 31, in the city of Pine Bluff, Arkansas, for
the sum of $20,000, $500 of which was paid in cash and
a note executed for $19,500. There was a three-story
brick building on the property which was known as the
Arlington Hotel, and the contract included all furniture,
fixtures and equipment within the building. The con-
tract also provided that said J. G. Ish, Jr., should begin
at once and complete within ninety days certain improve-

ments named and pay for all labor and material used in making said repairs. A further condition was that said Ish had deposited with the People's Building & Loan Association $500 in cash and a real estate gold bond for $1,000, payable July 30, 1938, said bond being secured by first mortgage on property in Chicago, Illinois. The bond and the $500 was pledged to guarantee the improvements mentioned should be made and paid for as stipulated in the contract. It was also provided in the contract that, if the said Ish failed to make the improvements and pay for the labor, the bond should be sold and the proceeds, together with the $500 cash pledged, should be applied as a credit on the note for $19,500.

The contract also contained the following provision: "It is expressly agreed that the party of the first part does not constitute or appoint the party of the second part its agent to make the repairs herein above listed, and that the party of the second part has no authority or right to place on said property or to subject said property to any lien for labor or material."

The contract provided that the title should be retained not only to the land and improvements to secure the payment of the purchase price, but the title was also retained to the furniture, fixtures, and equipment.

Either at the time the contract was made or some time thereafter, J. G. Ish, Jr., transferred and assigned his interest in the contract to Marietta Hotel, Inc., and he also, about the same time, entered into some sort of an agreement with Walter E. Parker. This arrangement, whatever it was, must have been made immediately after the contract was made with Ish.

W. W. Finch, secretary of the appellant, was asked: "When did you first know Parker in the deal?" He answered: "After Ish bought it I knew that Parker was doing the work for him. Ish would bring Parker up with him, and we had Parker sign the papers for the $3,000 loan with Ish as we thought he might have an interest in it."

On the 28th day of September, 1929, while the work was being done by Ish and Parker, the appellant required both Ish and Parker to execute a note and mortgage on the property for $3,000 to get money to pay for the improvements.

After the improvements had been made, the appellant brought suit in the Jefferson Chancery Court against Ish to foreclose on its original contract and against Ish and Parker to foreclose the mortgage given on the 28th of September, 1929, and each of the appellees was made a party defendant in plaintiff's original suit. Plaintiff alleged in its complaint that the Leslie Lumber Company and C. A. Smith, the appellees, had caused to be filed in the office of the clerk of the circuit court of Jefferson County on January 20, 1930, an account, and that each of them claimed a materialman's lien on the property covered by plaintiff's vendor's lien and mortgage.

Each of the appellees was served with process, and the appellant in its suit denied that either of them had any lien against the property, but, if they did have a lien, it was subordinate to its lien, both its vendor's lien and mortgage lien, and prayed for a decree holding its liens prior and paramount to the claims or liens of the appellees.

Each of the appellees, defendants in the original suit, filed an answer and cross-complaint against appellant and Ish and Parker.

The chancery court entered a decree in favor of appellant against Ish on its claim for a vendor's lien and against Ish and Parker for the amount due under the note and mortgage and foreclosing the lien. The court further decreed that the Leslie Lumber Company and C. A. Smith, trading as Co-Operative Plumbing Company, have judgment against Ish and Parker, and that each of the appellees have a mechanic's lien which was prior and paramount to any liens of the other parties to the suit, and that, out of the first proceeds from the sale of the real estate after the payment of costs of said sale

and commissioner's fee, the judgments of the Leslie Lumber Company and C. A. Smith be first paid.

The chancellor ordered the sale of the property, holding that the appellees' mechanic's liens were prior to appellant's lien, but did not give personal judgment against the appellant.

Appellant prosecutes this appeal to reverse said decree, and appellees prosecute a cross-appeal in which they seek to have personal judgment against appellant.

Appellant first contends that no summons was issued in the case and no service had on Ish and Parker, and therefore the court erred in giving personal judgment against Ish and Parker.

In the first place, Ish and Parker were made defendants in appellant's original suit, and a waiver of service of summons or other process was filed in the Jefferson Chancery Court on the 19th of October, 1930, long after the cross-complaints of appellees were filed. The record does not indicate who had the summons issued nor who filed the waiver in court. The cross-complaint of the Leslie Lumber Company was filed July 26, 1930, and the cross-complaint of Smith was filed July 23, 1930. While it appears that the waiver was signed by Ish on the 9th of July, and it also appears from the record that service of summons was accepted by Walter E. Parker and Willie S. Parker on July 1, 1930, they were not filed in court until the 17th of October, 1930.

If Ish and Parker were contractors, as the lower court held, they were necessary parties. Of course, if they were agents of appellant, they would not be necessary parties in a suit to foreclose the mechanic's liens.

Appellant calls attention to the cases of *Simpson* v. *J. W. Black Lumber Co.*, 114 Ark. 464, 172 S. W. 883; and *Cruce* v. *Mitchell*, 122 Ark. 141, 182 S. W. 530.

In the first case the court held that the contractor was a necessary party and should have been made co-defendant with the owners, because the owners would know nothing about what amount of materials had been fur-

nished nor how much material had gone into the improvements, and therefore he was a necessary party, both for his own and the owner's protection. In that case, however, the appellants demurred to the complaint for a defect of parties defendant, and the court overruled the demurrer, and the case went to trial without the contractor being made a party.

In the next case, *Cruce* v. *Mitchell, supra,* the court again held that the contractor was a necessary party.

This court, therefore, is committed to the doctrine that in suits to foreclose mechanic's liens the contractor is a necessary party. He should be made a party because the original contract for the improvements is made between the contractor and the owner. The other contract, that with materialmen, is made between the contractor and materialmen; the owner is not a party to it, and it is therefore necessary, in a suit to foreclose a mechanic's lien against the property of the owner, to make the contractor a party. The owner is not primarily liable, and it is necessary to make the contractor a party to prove the debt against him, show that the material went into the construction of the building, before the materialman is entitled to a lien against the owner's property, but the contractors here were made parties both in the original suit and in the cross-complaints filed by the materialmen. There is therefore no question here about defect of parties or a waiver of any such defect, but it is contended that the personal judgment against the contractors is erroneous because it is argued that they were never served with process. They were parties defendant in both suits and had entered their appearance in the suit. It is claimed that Ish is a nonresident, and that Parker was present in court when the case was tried.

The record does not show that Parker and Ish had been served with process, but it does not show that they had not been.

"The present litigation was initiated by the landowner at a time when the materialman could have come

into court and foreclosed their liens. The owner of the premises undertook to bring the contractor before the court, and procured an order enjoining the materialmen from instituting any suit against the owner or its property, looking to the foreclosure of their liens, and the whole matter should be settled in this litigation. The owner so tied the hands of the materialmen as to prevent any action outside of this litigation. It brought them into this litigation, and it does not lie in its mouth to say that they cannot obtain a judgment of foreclosure of their liens because they have not independently obtained a judgment against the contractor. They were enjoined from taking any steps looking to the foreclosure of their liens against the Realty Trust Company or its property. One of the necessary steps in a proceeding to foreclose that lien was to sue the contractor in an independent suit and obtain judgment, or to sue him concurrently with the owner of the premises. We therefore think that, by the voluntary action of the Realty Trust Company (the owner of the premises) requiring these materialmen to establish their liens in this litigation, it cannot contend that the contractor has not been personally served." *Mass. Bonding & Ins. Co.* v. *Realty Trust Co.*, 142 Ga. 499, 83 S. E. 210; 40 C. J. 412; *Peninsula Stone Co.* v. *Crane,* 226 Mich. 130, 197 N. W. 693.

In the instant case the appellant began the suit against the appellees and the contractors, brought them all into court, alleged that appellees were claiming mechanic's liens, and by the action of appellant they were required to litigate their claims in the suit brought by appellant with all the parties in court and it does not lie in its mouth to say that they cannot obtain a judgment of foreclosure of their liens because they have not obtained an independent judgment against the contractors, as was stated in the case above cited.

It is next contended by appellant that the ten days' notice required by the statute was not given, and it contends that this was jurisdictional. If the appellant had

no notice, and the appellees had brought an independent suit, they would fail because of not having given notice to the, owner. It is necessary to give notice to the owner because there may be a lien fixed on its property, and the statute requires that, before this be done, a subcontractor or materialman must give the notice, but the purpose of this notice is to give the owner an opportunity to defend the action or to take whatever steps it may think proper after it receives notice of a claim of a lien; but notice in this case would be perfectly useless. The materialmen did not bring this suit; the appellant brought it, and made the materialmen parties defendants, and required them to litigate their claims in that suit. Of course, it would not be necessary in that suit to give them notice of claim, to litigate which appellant had brought them into court.

Notice required by our statute is for the sole benefit of the owner, but it cannot claim that it is entitled to notice of the very thing put in issue by its own pleadings, but the appellant had notice, its own pleading wherein it said: "These materialmen claim liens" shows it had notice. When a person knows a thing, he has notice thereof. No one needs notice of a thing he already knows. *St. L. S. F. R. Co.* v. *State,* 179 Ark. 1128, 20 S. W. (2d) 878; 20 R. C. L. 1263.

In discussing the question of notice this court has said: "There must, according to our previous decisions, be a substantial compliance with this statute unless the owner had, by contract or by waiver, or in some manner by his own conduct, estopped himself from insisting on such compliance." *Conway Lbr. Co.* v. *Hardin,* 119 Ark. 43, 177 S. W. 408.

Of course, notice in this case, after the appellant had brought suit alleging that the appellees claimed liens. would be entirely useless.

It is next contended by the appellant that the lien for the purchase money is superior to that of the materialmen. Appellant cites and relies on *Gunter* v. *Ludlam,* 155 Ark. 201, 244 S. W. 348. In that case, however, the owner

did not authorize any improvements and did not consent to the improvements being made, and the court said: "Appellants, having placed Ludlam in possession under a contract of sale, were in the attitude of vendors who had conveyed property and had accepted a mortgage back as security for the debt.

"The statute (C. & M. Dig., § 6911) gives priority to liens for labor or material only against other incumbrances created after the commencement of the improvement, and in effect subordinates the lien to prior incumbrances by way of mortgage or otherwise."

The contract for sale in the instant case expressly provided that the improvements should be made, and this was a part of the consideration. The appellant authorized the improvements itself, required them to be made, and according to its own testimony, knew that the improvements were being made and knew that Parker was doing the work.

Mr. Finch, the secretary of the appellant, testified that after Ish bought the place that he knew Parker was doing the work; that Ish brought Parker up with him and Parker signed the note and mortgage with Ish.

If a sale of the place had been made by appellant to Ish and no improvements authorized by the appellant, and the purchaser had thereafter made improvements without any authority from the vendor to do so, under the principal announced in *Gunter* v. *Ludlam, supra,* the vendor's lien would have been prior to the mechanic's liens; but when the owner contracts to sell the place and expressly requires the improvements to be made for its own benefit, it cannot then claim that its lien is superior to the lien of persons furnishing labor or material.

Appellant next calls attention to and relies on *Harvey* v. *Gay,* 42 N. J. L. 176. That case holds that the written consent, which under the lien law will bind the land of the owner for repairs contracted by the tenant, must be absolute in its terms. The relation of vendor and purchaser did not exist in that case, but the relation of

landlord and tenant existed. The New Jersey statute construed by the court in the above case expressly provides that if any building is erected by a tenant or persons other than the owner of the land, then the building and estate of such tenant only shall be subject to the lien created by the act unless such building be erected by the consent of the owner of such lands in writing.

The act also provides for the acknowledgment and recording of the writing consenting to the improvement.

There was, in the New Jersey case above cited, a consent to make the improvements, provided they should be at the expense of the owner, and the court held, as we have already stated, that the consent mentioned in the statute must be absolute.

It is contended, however, by appellant that the clause in the contract of purchase, that the purchaser shall make the improvements, pay for them, and that they shall not create any lien on the property of the owner, prevents a mechanic's lien on the property. This contract was between the vendor and vendee, or owner and contractor. The subcontractors were not parties to the agreement and knew nothing about it. When they furnished the material to the persons authorized and required by the owner to make the improvements, the statute created the lien, and the owner could not, by contract between itself and the purchasers, have the things done for which the statute gives a lien, and in the agreement abrogate the statute.

This court recently said: "Our statute gives subcontractors, laborers and materialmen a lien upon the improvement, and this is based upon the right of the implied agency of the original contractor to bind the owner's title. If the owner could give a mortgage to the principal contractor and thereby defeat the rights of subcontractors, laborers and materialmen, then we would have the case of the owner and the principal contractor making a contract which would have the effect of abrogating a statute lawfully enacted by the Legislature.

This could not be done." *Home Oil Co.* v. *Helton*, 179 Ark. 132, 14 S. W. (2d) 549.

"It is claimed that the authority of the vendee in such a contract to charge the interest of the vendor rests upon the principle of agency, and that this provision is a limitation upon the agency, and that the rights of everyone who furnishes labor or material are subject to this limitation. If this is so, it would be a very convenient way to repeal the provisions of the lien law. Such a stipulation cannot deprive of their rights under the statutes, persons not parties to it. It is the law which at once creates the authority to charge the land and defines its extent." *Malmgren* v. *Phinney*, 50 Minn. 457, 52 S. W. 915, 18 L. R. A. 753.

In construing a contract similar to the one in this case, the New York Court of Appeals said: "The stipulation in respect to the priority of liens did not destroy the owner's consent that the houses should be built, nor diminish its effect, nor did it lessen the absolute obligation resting upon the vendee to build them. It was not the design of the parties to accomplish any such results, but simply to circumvent the statute, and defeat the rights given by it to persons furnishing labor and materials for the work, which design could not be accomplished by such a stipulation as against persons not in privity with either of the parties to it who should, without notice of the stipulation, furnish labor or materials for the work." *Miller* v. *Mead*, 127 N. Y. 544, 28 N. E. 387, 13 L. R. A. 701.

The appellant in this case required the improvements to be made, and it could not, by a clause in the contract between it and the contractor, circumvent the statute and defeat the rights given by the statute to persons who furnished material to make the improvements. As between the owner and the contractor, the stipulation was, of course, binding, but it could not in this way abrogate the statute.

810

What we have said makes it unnecessary to discuss the question of agency.

The appellees prosecute a cross-appeal in which they seek personal judgment against the owner. They would be entitled to this, of course, if Ish and Parker were agents of the owner and had authority as such agents to purchase the material, but under the evidence in this case we think the relationship was that of owner and contractor, and not principal and agent.

It follows that the decree of the chancellor, both on appeal and cross-appeal, must be affirmed. It is so ordered.

Mr. Justice KIRBY dissents.