ASHDOWN HARDWARE COMPANY *v.* HUGHES.

5-288                                                   267 S. W. 2d 294

Opinion delivered April 19, 1954.

[Rehearing denied May 17, 1954.]

*Shaver, Tackett & Jones* and *M. C. Lewis, Jr.,* for appellant.

*Johnson & Johnson,* for appellee.

J. SEABORN HOLT, J. This suit is a mortgage foreclosure, involving certain alleged liens for materials, claimed by appellants.

J. C. Stewart and wife (not parties here) were the owners of a tract of land of approximately six acres on which was their residence, subject to an outstanding mortgage of $4,500. On February 2, 1952, in order to secure money to pay off the mortgage indebtedness and build four tourist cabins on this tract, they executed a mortgage to appellee, Hughes, for $10,000, covering this property. This mortgage was recorded February 7, 1952, and contained these pertinent recitals:

542

"The sale is on the condition that whereas the grantors are justly indebted unto W. R. Hughes separate estate in the sum of Four Thousand Five Hundred Dollars as evidenced by our joint and several note of even date drawing interest from date until paid at the rate of seven per cent per annum and due as hereinafter stated; and this mortgage likewise secures an additional advance to be made by the mortgagee in the total sum of Five Thousand Five Hundred Dollars, said advances to be made as follows: The first advance to be made on completion by mortgagor of No. One Tourist Cabin and same fully insured on this property in the amount of not more than One Thousand Three Hundred and Seventy-Five Dollars; the second advance to be made on completion of second tourist cabin and same insured on this property not to exceed however the sum of One Thousand Three Hundred * * * and likewise for the third and fourth advance. Each advance as aforesaid to be evidenced by the notes of the mortgagors and drawing interest from date of advance until paid at the rate of seven per cent per annum. The principal sum of Four Thousand Five Hundred Dollars, plus all advances made under this mortgage, and the contemplation is that Five Thousand Five Hundred Dollars in advances will be made, shall be due and payable as follows: One payable one year after date of this mortgage; Two Thousand Dollars and all accrued annual interest payable two years from date of this mortgage * * *," and so on for other payments.

"The mortgagee covenants for himself, his heirs, executors, administrators or assigns to make the advances herein provided without delay and as provided herein and acceptance of this mortgage makes this covenant irrevocable. Mortgagors understand and agree that all advances made under this mortgage shall be used exclusively for building of cabins on this property and improving same and failure to so use said money or any part thereof the original note and all installments become immediately due and payable at the option of the Mortgagee or holder of said notes. * * *"

The mortgage also contained an acceleration clause and coverage for taxes and insurance advances by the mortgagee. On February 4, 1952, appellee advanced $4,500 to the Stewarts and the indebtedness on the property was discharged. The four cabins were completed on the mortgaged premises, insured, and inspected by the mortgagee, Hughes, on the following dates: April 30, 1952, May 23, 1952, July 11, 1952, August 15, 1952. Checks in the amount of $1,375 each were issued to Stewart on these respective dates. He, joined by his wife, executed notes for like amounts with 7% interest.

The record reflects that appellant, Ashdown Hardware Company, (a partnership) had filed a lien on said property for $1,192.02, on November 6, 1952, for materials furnished from February 20 through October 3, 1952, and appellant, Wilson Lumber Company, (a partnership composed of Richard L. Craigo and Lelia F. Craigo), had filed on October 24, 1952, lien for materials in the amount of $792.22 furnished from April 25 through July 28, 1952. It also appears that a second mortgage on this property in the amount of $922.06 in favor of R. L. Craigo, was executed October 14, 1952, and recorded on October 21, 1952.

Appellee (Hughes) in effect alleged in his complaint that he had advanced $10,000 to Stewart, the owner of the six-acre tract, under the terms of the above mortgage, for the purpose of making improvements on the property, that this money was so used and that his mortgage claim was superior to appellants' liens for materials, in the circumstances.

Appellants asserted that their claims for materials furnished were superior to appellee's mortgage, denied that any part of the money advanced by appellee was for improvements, asserted that appellee's mortgage constituted, in effect, five different mortgages and that all were inferior to their claims.

Appellant, Wilson Lumber Company, denied accepting the second mortgage, above, (in the amount of $922.06) ''in release of their materialman's lien pre-

viously filed and never intended to release  *  *  *  said lien in favor of said mortgage.''

Trial resulted in a decree directing foreclosure, the sale of the property, and declared appellee's mortgage superior to appellants' liens and all other claims. The court declared that appellee had a superior claim under his mortgage, in the amount of $10,836.89, on the proceeds of the sale, that appellant, Ashdown Hardware Company, had a valid materialman's lien on the property, but that it was inferior to appellee's mortgage. The court further decreed that appellant, Wilson Lumber Company, was entitled only to a judgment against the owners of the property, that its lien claim was inferior to that of appellee and also inferior to that of appellant, Ashdown Hardware Company, and other materialmen. This appeal followed.

Both appellants have joined on this appeal, but each has filed a separate brief.

Appellants say that ''the issue before this court is a determination of the rights of priority between appellants' liens and claims, and appellee's mortgage, and their rights in and to the proceeds from the sale of the property,'' and further assert that this case is one of first impression here.

A determination of the issues requires, primarily, construction of § 51-605, Ark. Stats. 1947, which provides: ''The lien for the things aforesaid, or work, shall attach to the buildings, erections or other improvements, for which they were furnished or work was done, in preference to any prior lien or incumbrance or mortgage existing upon said land before said buildings, erections, improvements or machinery were erected or put thereon, and any person enforcing such lien may have such building, erection or improvement sold under execution, and the purchaser may remove the same within a reasonable time thereafter; provided, however, that in all cases where said prior lien or incumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements

or buildings, then said lien shall be prior to the lien given by this act."

There was testimony on behalf of appellee, Hughes, that he advanced the $10,000 to the owner, Stewart, for the purpose of making improvements on the property and that this money was so used. It is undisputed that this $10,000 mortgage was executed February 2, 1952, duly recorded February 7th, that $4,500 was advanced February 4, 1952, to the owner, Stewart, and was used by Stewart to liquidate the existing mortgage on the property. It is further undisputed that all materials for the four cabins were furnished the owner subsequent to the recording date of the mortgage, February 7, 1952. This recorded mortgage was, therefore, notice to these appellants and the world, from and after its recording date, that appellee, Hughes, had a lien on the property here involved. This was the only mortgage executed by Hughes to the owner, Stewart. It is fair to assume that had appellants inspected the mortgage record and the provisions of this mortgage, it is not likely that they would have furnished materials for the cabins without first making arrangements with appellee, Hughes, for payment.

In construing the above statute, we said in *Sebastian Building & Loan Association* v. *Minten,* 181 Ark. 700, 27 S. W. 2d 1011: "Under the test prescribed by the statute, laborers and materialmen can learn the purpose for which the money was raised by examining the clerk's records, and if they do not believe the borrower will use it for that purpose, they may refuse to perform labor or furnish material towards the construction of the contemplated improvement. In any event, the statute should be construed as it was enacted by the Legislature, with its plain declaration that the sole test of the superiority of liens upon lands before improvements are made is the purpose for which the money is raised or borrowed, and not the use made of it. . . .

"The lien in favor of mechanics and materialmen is wholly statutory and the lien claimant must bring him-

self within the provisions of the statute in order to be entitled to a lien. If the Legislature had intended the *use* to which the money borrowed was the test of the superiority of the liens, it doubtless would have so declared, instead of making the *purpose* for which the money was borrowed the test. After a review of the authorities on statutory interpretation, Judge SANBORN, said: 'Apply the rule which these authorities announce to the statute in hand. It declares without uncertainty or doubt that the liens of prior mortgages whose proceeds were raised for the purpose of making improvements upon the mortgaged property are superior to subsequent mechanics' liens.' It says: 'that in all cases where said prior lien or incumbrance or mortgage was given or executed for the purpose of raising money or funds with which to make such erections, improvements or buildings, then said lien shall be prior to the lien given by this act.' . . . The test of their validity is the *purpose* for which the proceeds were obtained, not the *use* to which they were applied. . . .

"In *Shaw* v. *Rackensack Apartment Corp.*, 174 Ark. 492, 295 S. W. 966, it was held that a mortgage for the purpose of raising money to erect a building which was filed prior to the commencement of work by a lien claimant, was superior to a lien for labor and material furnished, notwithstanding that some of the loan, for which the mortgage was given, was used for clearing the title."

Under the terms of the mortgage, here involved, as we construe them, Hughes, the mortgagee was obligated and irrevocably bound to make the advances to construct the cabins when each was completed and insured, and this he did. He had no option in the matter.

We said in *Superior Lumber Company* v. *National Bank of Commerce,* 176 Ark. 300, 2 S. W. 2d 1093: "Mortgages to secure future advances are valid; but, where it is entirely optional with the mortgagee whether to make future advances or not, advances made after notice of a subsequent incumbrance, such as a lien for materials furnished, are inferior to the materialman's lien.

In other words, the general rule is that, if the amount for which the mortgage shall stand is wholly optional with the mortgagee, he cannot, after notice that a subsequent lien has attached, deplete the value of the equity. to the disparagement of its lienors by advances which, if refused, would not have been in force.''

The general rule is stated in 5 A. L. R., 399, in this language: ''By the weight of authority, a mortgage for future advances becomes an effective lien from the time of its execution, or as to subsequent purchasers and encumbrancers, from the time of its recordation, rather than from the time when each advance is made, where the making of the advances is obligatory upon and not merely optional with the mortgagee. (Citing many authorities). . . . Or where such advances are made without actual notice of the claim forming the basis of the mechanics' lien.''

In 41 C. J., page 525, § 465, the textwriter says: ''A mortgage may legally be given to secure future advances to be made to the mortgagor, and may become a prior lien for the amount actually loaned or paid, although the advancements are not made until after subsequent mortgages or other liens have come into force. . . . The law requires mortgages to be recorded and a recorded mortgage for future advances is notice to all parties subsequently dealing with the property as to the amount advanced pursuant to the mortgage, although the latter does not specify any particular sum which it is to secure. . . .

''(§ 466, page 526). While it has been said that there is a decided contrariety of judicial views on the subject, many of the decisions make the effectiveness of such a mortgage depend upon the character of the liability assumed by the mortgagee with reference to making the advances, holding that, if it is optional with him to make or refuse such advances, he will be protected by the security of his mortgage only as to advances made before the attaching of a junior lien, while if he is under a binding obligation to make the advances in any event, the mort-

gage will cover advances made after, as well as before, the junior lien.''

Both appellants say that, in any event, their liens should be held superior to appellee to the $4,500 advanced by Hughes to the owner to pay off the indebtedness against Stewart's property, since it did not go into his (owner's) improvements. We do not agree.

This money was used by the owner to clear the property, which included Stewart's residence, of a pre-existing debt. While literally this $4,500 was not used to construct a new residence for the owner, it was used to lift a debt burden on both the land and the existing residence. Hughes' security would thus be enhanced and he was given an added inducement to make his loan more secure. Certainly, indirectly, if not directly, the purpose was to improve the owner's property.

Finally, appellant, Wilson Lumber Company, argues that the court erred in denying its claim to a lien, in holding that its claim was inferior to appellee's mortgage, and appellant's, Ashdown Hardware Company's, lien and in decreeing that it should have judgment only against the owner's property. The answer to this contention is that the record showed that appellant, Wilson Lumber Company, failed to give the ten days' statutory notice of its intention to file a lien for materials as required by § 51-608, Ark. Stats. 1947. In fact, it appears that no effort was made to comply with this section, which provides:

''Every person, except the original contractor, who may wish to avail himself of the benefit of the provisions of this act . . ., shall give ten (10) days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due.''

In construing this statute, we held in *Doke, Administrator,* v. *Benton County Lumber Company,* 114 Ark. 1 (Headnotes 1 and 2) 169 S. W. 327, 52 L. R. A., N. S. 870:

"Liens of mechanics and materialmen for work done or material furnished in the construction of an improvement are creatures of the statute creating them, and must be perfected and enforced according to its provisions. 2. MECHANIC'S LIENS—NOTICE—Ten days' notice before filing the lien must be given by any one seeking the benefit of the act establishing mechanic's liens.''

We conclude, therefore, that the decree, on all issues, is correct and should be and is affirmed.

Justices MILLWEE, GEORGE ROSE SMITH and WARD dissent in part. Justices McFADDIN and ROBINSON concur.

ED. F. McFADDIN, Justice (concurring). To the majority opinion and the dissenting opinion, I desire to add this concurring opinion, to explain why I think the majority has reached the correct conclusion on the issue discussed in the dissenting opinion.

On February 4, 1952, Mr. Stewart executed a mortgage to Mr. Hughes for $10,000.00. Of this amount, the sum of $4,500.00 was used to retire indebtedness then owed by Stewart; and the sum of $5,500.00 was agreed to be paid by Hughes to Stewart when, as, and if Stewart built certain cabins on the mortgaged lands. The Hughes mortgage was recorded on February 7, 1952. Payment of the $5,500.00 was made in installments in April, May, July, and August, 1952. Beginning on February 20, 1952, Ashdown Hardware Company (hereinafter called "Ashdown") furnished materials to Stewart for use in the construction of the four cabins; and, primarily, this is a suit to determine the superiority of the mortgage lien of Hughes over the materialman's lien of Ashdown.

As to the $5,500.00 advanced in the course of the construction, the majority holds that the Hughes mortgage is superior. I agree with that holding; and I understand the dissenting opinion does not disagree with such result.

It is as to the $4,500.00 which Hughes paid to Stewart on February 4, 1952, that the dissent arises. The majority holds that the Hughes mortgage for the $4,500.00 is superior to Ashdown's lien; and the dissenting opinion

is of the opposite view, relying largely on the case of *Peoples B. & L. Ass'n* v. *Leslie,* 183 Ark. 800, 38 S. W. 2d 759, a case not discussed in the majority opinion.

Independent of the principle of subrogation, I think the majority is correct in holding the Hughes mortgage lien to be superior to Ashdown on the $4,500.00 item, because the case of *Peoples B. & L. Ass'n* v. *Leslie Lbr. Co., supra*—relied on in the dissenting opinion—has facts which clearly distinguish it from the case at bar. In the cited case, Peoples B. & L. Ass'n had sold property to Ish for $500.00 cash and a vendor's lien for $19,500.00, *and in addition had required Ish to make certain improvements* which resulted in the lien of Leslie Lumber Company. This Court held that Peoples B. & L. Ass'n *required that the improvements be made, and that such requirement was the point that differentiated the Peoples-Leslie* case from the general rule stated in *Gunter* v. *Ludlam,* 155 Ark. 201, 244 S. W. 348. Here is the language of this Court on this point, as found in the *Peoples-Leslie* case:

" 'The statute (C. & M. Dig., § 6911) gives priority to liens for labor or material only against other incumbrances created after the commencement of the improvement, and in effect subordinates the lien to prior incumbrances by way of mortgage or otherwise.' [1]

"The contract for sale in the instant case expressly provided that the improvements should be made, and this was a part of the consideration. The appellant authorized the improvements itself, required them to be made, and according to its own testimony, knew that the improvements were being made and knew that Parker was doing the work. . . .

"If a sale of the place had been made by appellant to Ish and no improvements authorized by the appellant, and the purchaser had thereafter made improvements without any authority from the vendor to do so, under the principle announced in *Gunter* v. *Ludlam, supra,* the ven-

---

[1] C. & M. Dig. § 6911 is now § 51-607 Ark. Stats.

dor's lien would have been prior to the mechanic's liens; but when the owner contracts to sell the place and expressly requires the improvements to be made for its own benefit, it cannot then claim that its lien is superior to· the lien of persons furnishing labor or material.''

In the case at bar, *Hughes did not require Stewart to build any of the four cabins that resulted in the lien claim of Ashdown*: rather Hughes merely obligated himself to furnish the $5,500.00 to Stewart when, as, and if the cabins were built. The mere fact that Hughes agreed to make further advances—as Stewart might require—should not defeat the superiority of Hughes' mortgage for the $4,500.00 that he advanced to Stewart *before* any materials were furnished by Ashdown. I do not understand that the case of *Peoples B. & L. Ass'n* v. *Leslie Lbr. Co.* goes to such an extreme.

Of course, under § 51-605 Ark. Stats., Ashdown might have enforced a prior lien on the cabins—if they were removable from the land. *Imboden* v. *Citizens Bank,* 163 Ark. 615, 260 S. W. 734; *Fine* v. *Dyke,* 175 Ark. 672, 300 S. W. 375, 58 A. L. R. 907; *Morrilton Lbr. Co.* v. *Groom,* 176 Ark. 520, 3 S. W. 2d 293. But the issue of removing the cabins from the land is not involved in this case.

For the reasons herein stated, I agree with the result reached in the majority opinion; and I am authorized to state that Mr. Justice ROBINSON joins in this concurrence.

GEORGE ROSE SMITH, J., dissenting. It does not seem to me that the appellee's initial advancement of $4,500 is entitled to priority. The statute relied upon by the majority awards priority to a mortgage given for the purpose of making improvements. Ark. Stats. 1947, § 51-605. This $4,500 was advanced for the purpose of paying off preëxisting mortgage liens. Had the transaction stopped at that point I do not suppose anyone would contend that the loan was made for the purpose of making improvements. It happens that additional advances provided for by the same mortgage were in fact used for the purpose contemplated by the statute, but I fail to see how this

circumstance converts the refinancing of prior mortgages into a loan made for improvement purposes.

We must lay aside the possibility that the appellee, as to this $4,500, may be entitled to subrogation to the liens of the mortgages that were paid off with this money. Subrogation has not been sought by the appellee, either in the trial court or here. Furthermore, the majority reach their conclusion by charging laborers and materialmen with the information that an examination of the public records would have disclosed. Such an inspection would not have alerted the appellants to the possibility of subrogation, for the appellee's mortgage contains no warning that the original $4,500 advancement was to be applied to existing mortgages. If the public record is to govern, a claim to subrogation should be buttressed by language in the mortgage indicating it to be a renewal of an earlier lien.

On the main issue I cannot reconcile today's decision with our holding in *People's Bldg. & L. Ass'n* v. *Leslie Lbr. Co.*, 183 Ark. 800, 38 S. W. 2d 759. There the seller of a hotel asserted a claim for unpaid purchase money in the amount of $19,500. But the contract of sale provided that the buyer should make certain repairs and improvements, and the seller knew that the work was being done. Even though the contract of sale purported to protect the seller against liens for labor or material, we held that the seller, by authorizing and requiring the work in question, thereby subordinated its purchase-money claim to the liens of laborers and materialmen.

In the case at bar the appellee certainly authorized the work and knew that it was in progress. Indeed, if he was unconditionally required to make the subsequent advances—and the majority so hold—then it is equally true that Stewart was unconditionally required to make the improvements. In that situation the *Leslie* case, *supra*, holds that the mortgage lien is subordinate to claims arising from the improvements that were contemplated by both parties to the mortgage. That conclusion seems to me to be entirely just. A mortgagee can protect himself

by withholding his advances until the mortgagor submits satisfactory proof that all labor and material have been paid for. This appellee admits in his testimony that he exercised no real diligence in this respect. But, as a practical matter, the mechanic's lien claimant lacks this opportunity for self-protection. An uneducated laborer, applying for work on a construction job, should not be required to travel to the county seat to attempt what is for him the impossible task of analyzing the public record of deeds and mortgage. In some cases, it is true, the statute does impose that burden upon the laborer; but in the *Leslie* case we held that it did not exist in the circumstances now before us. I would accordingly hold that the appellee's mortgage is not entitled to priority to the extent of the first advancement of $4,500.

WARD, J., joins in this dissent.