## PRUGH v. IMHOFF, ET AL.
(No. 1748; March 15, 1932; 9 Pac. (2d) 152)

For the appellants there was a brief and oral argument by *Mr. F. E. Anderson,* of Laramie, Wyoming.

For the plaintiff and respondent there was a brief by *Tipton* and *McGowen,* and oral argument by *Mr. Tipton,* of Laramie, Wyoming.

RINER, Justice.

David V. Prugh, as plaintiff, brought an action in the District Court of Albany County, Wyoming, against Lee Imhoff, Walter Jackson, C. J. Kuhn and Jack Archer, as defendants. Summarized, the seven numbered paragraphs embraced in plaintiff's petition were to the following effect:

First, that on October 12, 1928, the Cliff Gold Mining Company, a Wyoming corporation, gave plaintiff its note for $1500 due one year from date with interest at eight per cent per annum, and also four other notes each for $500 bearing the same rate of interest and maturing as did that for the larger sum. Second, that to secure these obligations, the corporation on the date last mentioned, executed to plaintiff a chattel mortgage covering certain mining claims, machinery and equipment thereon, owned by the corporation and situate in Albany County, Wyoming, said mortgage being attached to and made a part of the petition; that this mortgage which contains a Power of Sale to be exercised by plaintiff in case of default in payment of the notes, was filed in the office of the Register of Deeds of Albany County on October 15, 1928. Third, that on October 12, 1930, the corporation paid $500 on the principal of said notes and $560 on the accrued interest.

Fourth, that on May 5, 1930, the corporation by an instrument duly recorded, leased the property included in the mortgage to plaintiff, as aforesaid, to the Cliff Leasing Company, a Colorado corporation; that by the terms of the lease, to which plaintiff was not a party and of which he had

no actual knowledge, the Cliff Leasing Company assumed the payment of the debt due plaintiff from the lessor. Fifth, that while the property was thus mortgaged, the defendants above named, claiming the two corporations mentioned above were indebted to them for work and labor, filed and recorded in the office of the Register of Deeds of Albany County, notices of miner's liens on the property so mortgaged and instituted suits in said District Court to foreclose such liens as follows: On April 1, 1931, the defendant Imhoff filed his notice claiming a lien on said property in the sum of $1229.30, for work and labor performed thereon at the request of the Cliff Leasing Company, from October 15, 1929 to December 31, 1930, suit to foreclose said lien being filed April 9, 1931. On April 6, 1931, one Ella Jackson, filed and recorded a notice of miner's lien in the office of the Register of Deeds of Albany County, claiming a lien on said property in the sum of $281.55, for work done thereon at the request of the Cliff Leasing Company, from September 28, 1930 to December 11, 1930, which claim was on April 14 following assigned to defendant Walter Jackson, who also, on April 6, 1931, filed a similar claim of lien for $486.83, for work and labor performed on said property from September 23, 1930 to February 19, 1931, suit to foreclose both of these claims of lien being filed April 14, 1931. On April 1, 1931, the defendant Kuhn filed his notice claiming a lien on said property in the sum of $784.25, for work and labor performed thereon at the request of the Cliff Leasing Company, from March 19, 1930 to January 31, 1931, suit to foreclose said lien being filed April 19, 1931. On April 2, 1931, the defendant Archer filed his notice claiming a lien on the said property in the sum of $515.65, for work and labor performed thereon at the request of the Cliff Leasing Company, from June 1, 1930 to December 10, 1930, suit to foreclose said lien being filed June 3, 1931.

Sixth, that no part of the money due plaintiff has been paid except the amounts stated above and that there is still

due him the sum of $3,000 with interest thereon from October 12, 1930 at eight per cent; that the two corporations aforesaid are insolvent and the value of the properties covered by the mortgage insufficient to pay the mortgage debt; that the defendants assert their liens as prior claims against the mortgaged property under Chapter 307 (Secs. 4827-4858) Wyo. Comp. St. 1920, relating to miners' liens; that they are about to proceed against said property and sell it to satisfy their said claims unless restrained by the court from so doing; that plaintiff cannot foreclose his mortgage and sell the property thereunder for a price commensurate with its value until defendants' liens are declared subsequent to said mortgage; that should plaintiff sell and remove said property and thereafter defendants' liens were declared prior to plaintiff's mortgage lien, plaintiff would be deemed guilty of a misdemeanor under the law of this state; that ordinary legal remedies are either unavailable . or inadequate.

Seventh, that in each of the lien foreclosure suits, the same property is claimed by defendants as plaintiff claims under his mortgage; that as between plaintiff and the defendants, all questions of law and fact are common and to protect his interest, he would be obliged to interplead in each of said actions; that a declaratory judgment of the court with respect to the questions of law in controversy will avoid a multiplicity of actions.

The relief prayed was for a judgment declaring plaintiff's mortgage lien to be prior and superior to the asserted miner's liens of the defendants and restraining them from interfering with its foreclosure.

The defendants answered admitting the allegations of the petition contained in the first and second paragraphs thereof, and also stating that, not having any knowledge of the matters alleged in the third paragraph, they deny the same. They admit the leasing by the Cliff Gold Mining Company to the Cliff Leasing Company of the property described in the petition and while denying that the company last men-

tioned is a Colorado corporation, admit all other allegations in the fourth paragraph of said petition and also those contained in the fifth, sixth and seventh paragraphs thereof. They further allege that the liens of the defendants are prior to the plaintiff's mortgage as set forth in Section 4832, Chapter 307, Wyo. Comp. St. 1920, and pray for a judgment accordingly. Plaintiff filed a reply denying all averments of the answer not admitted in the petition.

The case was disposed of by the District Court upon a motion for judgment on the pleadings filed by plaintiff. This motion the court granted, finding generally for the plaintiff and against the several defendants and that the lien of plaintiff's mortgage was prior and superior to the miner's liens asserted by the defendants. It was consequently so adjudged and also ordered that plaintiff might foreclose his mortgage free from the encumbrances of defendants' several liens and that the defendants be restrained from interfering with the foreclosure and sale of the said property under the mortgage, the rights of defendants as junior lienors to be unaffected by the judgment. Costs were also awarded plaintiff.

The record in the case is here by direct appeal on the part of the defendants from this judgment to which they reserved due exception.

Appellants, while, conceding that it is the law that "in the absence of statute, the date of filing determines the priority of the several liens," yet contend here that Section 4832 Wyo. Comp. St. 1920 directs that a miner's lien should take precedence over a prior mortgage and the proper construction of this statute, as applied to the facts established by the pleadings, is hence the only question presented for decision.

Section 4832, which was enacted as Section 3 of Chapter 128, Laws of Wyoming 1919, reads as follows:

"The lien herein provided for shall attach to the materials, machinery and supplies and the specific improvements made, in preference to any prior lien or encumbrance or

mortgage upon the land or leasehold interest upon which the said materials, machinery, supplies or specific improvements are placed or located, provided, however, that any lien, encumbrance or mortgage upon the land or leasehold interest at the time of the inception of the lien herein provided for shall not be affected; and the holder or holders of such prior lien or liens upon such land or leasehold interest shall not be necessary party or parties in suits to foreclose the liens hereby created.''

As an aid in interpreting the statute just quoted, reference at this point may be made to Section 4864 Wyo. Comp. St. 1920, found in the general law of the state, relating to mechanics' and builders' liens and which has been in the body of the law of this territory and state since 1877, (Laws 1877, p. 77) when it was passed as Sections 3 and 7 of ''An act to create a Lien for Mechanics and others in certain cases.'' That section's language is:

''The lien for the things or materials furnished or work and labor performed shall attach to the building, erection or improvements for which they were furnished, or the work and labor was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which said buildings, or erection, improvements or machinery have been erected or put, and any person enforcing such lien may have such building, erection or improvements sold under execution, and the purchaser thereof may remove the same within a reasonable time thereafter; and such lien shall be preferred to all other incumbrances which may be attached to or upon such building or other improvements or the ground, lot or land upon which they are situated or located, or either of them, subsequent to the commencement of such buildings or improvements.''

It will be observed that the phraseology of this section last quoted in its opening clause furnishes a model so far as it deals with priorities of liens, upon which Section 4832 appears to have been patterned. It will be recalled, also, that our general mechanics' lien law was in large measure borrowed from Missouri. Becker v. Hopper, 23 Wyo. 209,

147 Pac. 1085; National Supply Co.-Midwest v. Weaver, et al., 35 Wyo. 224, 248 Pac. 353. In that state, the effect of the language appearing in the first clause in our Section 4864, supra, has been repeatedly considered by the Missouri courts. In that jurisdiction, as said in the subsequent case of Elliott & Barry Engineering Company v. Baker, 134 Mo. App. 95, 114 S. W. 71, 72, the opinion in Haeussler v. Thomas, 4 Mo. App. 463, cited by counsel, is "not only the pioneer decision on the question, but also the most luminous and instructive." The case last mentioned was one where the mechanic did work in repairing houses which were on the land when the deed of trust was given under which Haeussler purchased. The St. Louis Court of Appeals decided that as against a prior mortgagee, a material man or contractor was not entitled to a lien for repairs and in the course of its opinion said:

"The 3d section is as follows: 'The lien for the things aforesaid, or work, shall attach to the buildings, erections, or improvements for which they were furnished, or the work was done, in preference to any prior lien, or encumbrance or mortgage, upon the land upon which said buildings, erections, improvements or machinery have been erected or put; and any person enforcing such lien may have such building, erection, or improvement sold under execution, and the purchaser thereof may remove the same within a reasonable time thereafter.' It is under this section that the appellants claim. But if the construction contended for by the appellants be put upon it, the law will then be retrospective in its operation, will impair the obligation of contracts, will divest settled rights of property. To test this, put a case where a mortgagee advances money to build buildings, and on their completion takes his mortgage and duly records it. If, as against his vested rights in the buildings, a stranger to him, the mechanic, under a lien accruing long afterwards, may sell the buildings or take them away, and thereby deprive the mortgagee of the security on which he may have chiefly relied, it would seem clear that the obligation of the mortgage contract is impaired, and settled rights of property divested.

"The effect of the 3d section is, to a certain extent, to separate, in favor of the lien-holder, the buildings from the land; but the intention is not to do this as against persons who have previously parted with their money on the faith of a lien on the buildings as well as on the land. * * * If the building is completed before a mortgage is given, the mortgagee has as much right to rely on the building as on the land. Any separation of buildings and land must, at this stage, be at the expense of the mortgagee, who has bought and paid for his prior lien. But where the mechanic builds a new building, here is property on which the prior mortgagee did not rely, and so, in favor of the mechanic, the statute does away with the rule that makes the building follow the land, and, *quoad hoc,* separates the two."

Similarly, in Dugan v. Scott, 37 Mo. App. 663, the lien of the mechanic was also for repairs on buildings which were in existence and were covered by a prior mortgage on the land. It was likewise held by the Kansas City Court of Appeals that the lien was subordinate to that of the existing mortgage and concerning the point, this language was used:

"The next question involves the construction of the mechanics' lien law as applied to those who make repairs on buildings, which, with the land upon which they are situated, are mortgaged at the time the improvements or repairs are made.

"By Section 3172, Revised Statutes, 1879, every mechanic who, under contract with the owner, performs work or furnishes material for any building upon land, or for repairing the same, has a lien, for such work or material, upon such building, erection or improvement, and upon the land belonging to such owner upon which the same are situated. By section 3173, the land aforesaid upon which the building or improvement is situated shall be subject to said lien only to the extent of the title or interest the owner of the building, erection or improvement has in it.

"Section 3174 gives the lien on the building, erection or improvement a preference over any prior lien upon the land upon which the building has been put. We conclude that this contemplates a building or improvement which has been put on the land *since* the prior lien, as, otherwise, it would

152

not have said prior lien on the land; for, if the statute contemplated the building put up before, it would have read prior lien on the land *and building.*

"So, taking the three sections together, our opinion is that, since a mortgage or deed of trust on land, upon which there is a building, covers the building as well as the land, the lien for repairs or improvements, which are put upon such existing building, will be subject to the prior lien of the mortgage or deed of trust; otherwise one's principal security might be repaired or improved from under him. But if the building, erection or improvement is an independent affair, not in existence when the mortgage was taken, it will be subject to the 'mechanics' lien' in preference to the mortgage which may have heretofore existed on the land, and it may be sold and removed as provided by statute."

The Supreme Court of Missouri afterwards, in the leading case of Schulenburg v. Hayden, 146 Mo. 583, 48 S. W. 472, 474, reached the same conclusion as announced in the foregoing cited cases in the courts of appeal. There the mortgage covered lots and a house thereon, the house being worth about $6,000. This house was thereafter damaged by a fire to the extent of $4,000. The owner of the property repaired and enlarged the house so that the building was then worth $10,000. The plaintiffs were purchasers at a sale under a mechanic's lien which attached to the house, only, for the labor and materials employed therein after the fire. The defendants were purchasers at a sale under the mortgage. In holding that the latter obtained a better title to the house, the court remarked in part:

"The true construction to put on Section 6707, Revised Statutes 1889, (identical with the '3d section' quoted in Haeussler v. Thomas, supra) is that if there is a mortgage on the *land,* and a contractor, under contract with the owner of the equity of redemption, builds a new house upon the land, he has a mechanic's lien against the *house,* and the *house* may be sold, and may be removed from the *land* by the purchaser, for this preserves to the mortgagee all the security he formerly had, and secures, as far as possible, the payment to the contractor for the work and materials he employed in building the house. * * * But where the

mortgage covers the *land* and the *house,* and the house is partially destroyed by fire, and the contractor reconstructs it under a contract with the owner of the equity of redemption, Section 6707, does not authorize the mechanic's lien to take priority over the mortgage or the sale of the reconstructed *house* and its removal. It may be that the reconstruction of the house would increase the security of the mortgagee, but he is not bound to rebuild the house—he may be content with his security of the land and the ruins of the house—which may be worth, as in this case, two fifths of his mortgage. He has no power to prevent the owner of the equity of redemption from contracting with any person to reconstruct the house upon the faith of the credit of such . owner, because he is not even entitled to foreclose his mortgage until condition broken, and is not entitled to exercise acts of dominion over the property (except to prevent waste) until he acquires title at the foreclosure sale. On the other hand, the contractor can protect himself by not taking the risk, without the express consent of the mortgagee.''

The interpretation of the language of the Missouri statute to be gathered from the cases reviewed above has been acquiesced in and followed in many other decisions in that state. To cite a few, see McAdow v. Sturdevant, 41 Mo. App. 220; Reed v. Lambertson, 53 Mo. App. 76; Elliott & Barry Engineering Co. v. Baker, supra; Orear v. Dierks Lumber Company, 188 Mo. App. 729, 176 S. W. 467; United Iron Works Company v. Sleepy Hollow Mining and Development Company, et al., 198 Mo. App. 562, 198 S. W. 443; Jones Lumber Company v. Snyder, 221 Mo. App. 1227, 300 S. W. 850; Lowry-Miller Lumber Company v. Dean, 29 S. W. (2nd) (Mo. App.) 736.

It may be noted also that statutory language similar in character with that under examination in the foregoing cases has received similar construction in other states. See Morrilton Lumber Company v. Groom, 176 Ark. 520, 3 S. W. (2nd) 293; Getchell & Tichenor v. Allen, 34 Ia. 559. With that construction we are in accord as it seems to us based upon sound principles and leads to equitable results.

In the case at bar, plaintiff's mortgage included both the mining claims and the personal property described therein. Its validity asserted under Section 4681, Wyo. Comp. St. 1920 is not attacked. Under the pleadings, the miner's liens are attempted to be fastened upon the identical property covered by the mortgage. The lien of that instrument attached to all this property as between the parties thereto on October 12, 1928 and as to others, not later than October 15, 1928 when it was filed in the office of the County Clerk of Albany County. None of the work or labor upon which the miner's liens are predicated appears to have been done prior to October 15, 1929 and no claim of lien was made earlier than April 1, 1931. Under such circumstances as pointed out by the Missouri courts, to allow the subsequent miners' liens precedence over the mortgage would be to permit the mortgagor by its own subsequent contract to wipe out the security for which the mortgagee bargained and paid. This cannot be the law.

Section 4832, supra, simply clarifies the rights to be given a prior mortgage upon the "land or leasehold interest" *only* and a miner's lien upon "materials, machinery and supplies" when they are placed upon the land or leasehold after the lien of the mortgage has attached. When these materials constitute independent additions thereto and upon which the mortgagee cannot be said to have relied in bargaining for his security, in such case the miner's lien attaches to the independent structure, machinery, etc. in preference to the lien of the mortgage. The Missouri decisions make this perfectly clear in their discussion of the effect to be given a mechanic's lien claimed for merely repairing a building upon the land where the mortgage lien was already affixed to both land and structure. In that situation, as we have seen, the section does not operate to interfere with the priority of the mortgage in the least. It is perfectly plain then, we think, under the authorities that, where, as in the case at bar, both the mining claims and all the personalty

thereon were and are subject to a mortgage lien and the work and labor upon the premises for which a miner's lien is asserted was performed and claim therefor made long after said mortgage lien attached, Section 4832 was not intended to nor does it work a subordination of that lien to the miner's lien.

These views lay no hardship upon the miner's lien claimant as he is warned by the county records of the condition in which the property stands as regards the lien of the prior mortgage. He can protect himself by not taking the risk of doing the work without the express consent of the mortgagee. He must be held to know that under the circumstances disclosed in this record, he could rely only upon the personal credit of the corporations employing him, unless the mortgaged property would sell for more than the amount due thereon.

The judgment of the District Court of Albany County is in harmony with what has been said, is correct as we understand the law and should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.