Mary Louise SARGENT, Appellant
(Defendant below),

James A. Robinson and Mary M. Robinson
(Defendants below),

v.

Vernon T. DELGADO, dba Delgado Oil Company, Appellee (Plaintiff below).

No. 3986.

Supreme Court of Wyoming.

Jan. 3, 1972.

John D. Troughton and E. J. Herschler, Kemmerer, for appellant.

Gerald R. Mason, Pinedale, for appellee.

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Action to foreclose a lien against certain property known as Sargent's Inn or Robinson's Lodge in Daniel was brought by Vernon T. Delgado against Mary Louise Sargent[1] (who had owned the Inn for many years and was again in possession of the property) and James and Mary Robinson[2] (who had previously been in possession of the Inn under an executory contract of sale with Miss Sargent). Miss Sargent answered the complaint with a general denial and made various affirmative allegations. She also counterclaimed against Mr. Delgado (subsequently dismissed) and cross-claimed against the Robinsons. They made no appearance and filed no responsive pleadings, but Mr. Robinson under subpoena testified at the trial. The matter was tried to the court without a jury and judgment was entered

---

1. Plaintiff in amended pleadings added a cause of action based upon unjust enrichment, but at the trial presented no evidence to support it and has not raised the matter on the appeal.

2. Subsequent to the termination of Mr. Robinson's possession of the lodge he obtained a discharge in bankruptcy.

ordering sale of the lodge buildings to satisfy the lien.[3] Appeal was taken and it is now argued that the court erred:

(1) In sustaining the lien as valid since it failed to include all the elements essential for a valid lien required by § 29–11, W.S.1957;

(2) In adjudging a lien against the real property belonging to Miss Sargent because the lien, if any, authorized by §§ 29–4 and 29–5, W.S.1957, could only be against the equitable interests of the Robinsons, which had been extinguished prior to the time Delgado filed the lien or action;

(3) In sustaining the lien as valid since there was a failure of proof that it was filed within the time required by § 29–11, W.S.1957.

Miss Sargent and the Robinsons had entered into an executory contract October 6, 1965,[4] for the purchase and sale of the Inn for $63,000, plus 5 percent interest—payable $3,600 annually—the Robinsons taking possession in the fall of 1965. They were in continuous and sole possession and control of the property until January 1969 at which time, being in default of the contract, they surrendered possession to Miss Sargent, delivering a quitclaim to her.

Sometime in the spring of 1966 Mr. Robinson requested that Mr. Delgado replace a water heater in the main lodge of the Inn, and they discussed the possibility of the Robinsons establishing a line of credit up to $4,000 for the purpose of changing the existing heating system from coal and wood burning stoves to liquified petroleum. An agreement was reached and various individual heaters and furnaces were installed in the coffee shop, main lodge, and individual cabins. Work was done over a two-year period (from the summer of 1966 to the fall of 1968). On February 13, 1969, after the Robinsons had given up the premises to Miss Sargent without having paid for the various heating units, the lien was filed against the lodge property.

As to defendant-Sargent's first point, it is argued that Delgado failed to comply with the statutory requirement necessary for the creation of a lien and that thereafter as a matter of law the lien statement was fatally defective, specifically that the Robinsons, and not Miss Sargent, were named, and that § 29–11 calls for the name of the *owner*. She points out that as this court observed in Arch Sellery, Inc. v. Simpson, Wyo., 346 P.2d 1068, 1071, since mechanics' liens are not recognized at common law but are in derogation thereof and not allowed in equity independently of statute there must be a full compliance with the requirements which the legislature has established. It is further contended that this court in Wyman v. Quayle, 9 Wyo. 326, 63 P. 988, has already ruled on this issue favorably to her position. We cannot agree. When the Wyman case was before the court, § 2895, R.S.1899, the predecessor of § 29–16, W.S.1957, had not been amended to provide that defects in the statement of the lien account were to be disregarded when, inter alia, the owner of the property had knowledge of the fact that "work and labor was being done." In the instant case, the court found that "improvements made to the buildings were made with the knowledge of Mary Louise Sargent" and there was evidence in the record to support such finding. We, therefore, hold there was no error on this aspect.

It is next alleged that the lien could only be against the equitable interests of the Robinsons, not against the legal interest in the property held by Miss Sargent, and that since the equitable interests of the Robinsons had been extinguished, the district court could not declare the property subject to a lien. Defendant-Sargent admits that in this jurisdiction the supreme court has not ruled on the problem of

---

3. The lien was in the amount of $3,723.35. The court struck $495 of this, the amount charged for a water heater.

4. The contract was filed of record September 19, 1966.

whether the owner of equitable title can burden the legal title with liens, but points to the fact that other jurisdictions have so held, particularly Missouri,[5] the law of origin of our lien statutes (§§ 29-3—29-26, W.S.1957), and cites 53 Am.Jur.2d Mechanics' Liens, § 125, for the general statement that:

"Under statutes confining mechanics' liens to claims for labor or materials furnished for improvements made under contract with the owner or proprietor, a contract made by a vendee for labor and materials will not subject the legal owner's interest to a lien, even if the latter has knowledge that the labor and materials are being furnished. * * * "

Plaintiff does not question the purport of the general law. Neither does he question the Missouri holdings, which consider all of the lien statutes in pari materia, including that after which our § 29-4 is patterned, allowing the lien only by virtue of a contract with the owner, proprietor, or his agent. Instead he argues that examining the evidence most favorable to plaintiff the Robinsons were the agents or representatives of defendant-Sargent for the purpose of the "improvements." He says there was discussion about the installation of a heating system before the execution of the contract; the Robinsons were placed by Miss Sargent in sole possession of the premises during the period in question; she knew of the work as it progressed but made no objection to Mr. Delgado; the parties' contract provided, "The Buyer shall not cause any waste, nor in any manner damage said real or personal property, and any damage which might be caused shall immediately be repaired by and at the expense of the Buyer"; some of the heaters were twenty years old at the time the Robinsons took possession and certain of the units were burned out inside; and Mr. Robinson had testified that the changes in the heating system involved "replacing stoves that wasn't adequate." Mr. Del-

gado concludes that the cumulative effect of the evidence was that the work was done progressively with Miss Sargent's knowledge and consent *as a repair*. We find no support for plaintiff's conclusion. Miss Sargent testified that when she found a furnace had been installed she "went to the lawyer and had a letter notifying them [the Robinsons] that the changes were not to be made without my sanction. I think there were four or five complaints because they were making major alterations." This was not controverted. Mr. Robinson testified that prior to their contract he and Miss Sargent had discussed his living at the lodge year-round and whether the heating system was adequate for his family to be able to live there; that after he was in possession he never asked her permission to make the changes in the heating system and recalled several letters he had received from her, which did not give her approval. It is true that "some" of the stoves discarded were "burned out" inside, but, of course, this was a complete change in the heating system and not a replacement of stoves which were damaged. Thus, the cumulative effect of the evidence showed that although Miss Sargent became aware of some of the work having been done it was all without her consent and *not* as a repair.

While a case truly in point has not been litigated in this jurisdiction so that we have had no occasion heretofore for a consideration of the matter, the basic philosophy of our lien law, which had its genesis in the statutes of Missouri, is evident in Prugh v. Imhoff, 44 Wyo. 143, 9 P.2d 152, 154-155, a case dealing with a claimed miner's lien. There, notwithstanding that the case dealt with mining liens, Judge Riner took occasion to discuss at some length those relating to mechanics' and builders', citing Schulenberg v. Hayden, 146 Mo. 583, 48 S.W. 472, 474, where the court in discussing the Missouri counterpart of our § 29-6,[6] said:

5. Ford v. Dixon, 171 Mo.App. 275, 157 S.W. 99.

6. "The lien for the things or materials furnished or work and labor performed

"The true construction to put on * * * [that section] is that if there is a mortgage on the land, and a contractor, under contract with the owner of the equity of redemption, builds a new house upon the land, he has a mechanic's lien against the house, and the house may be sold, and may be removed from the land by the purchaser; for this preserves to the mortgagee all the security he formerly had, and secures, as far as possible, the payment to the contractor for the work and materials he used in building the house. This is all that section * * * means * * *."

This was the philosophy that controlled the mentioned decision of Ford v. Dixon, 171 Mo.App. 275, 157 S.W. 99, a case where the owner of real property sold it on a contract for deed and the purchaser with the knowledge of the seller caused certain alterations and repairs on the building to turn it into a rooming house with a restaurant and the persons furnishing the services and materials sought to enforce a mechanic's lien. The court there decided that the lien law under circumstances which are akin to the instant case does "not compel the vendor to pay for something he did not order or desire, on pain of being despoiled of a moiety of his estate," 157 S.W. at 101. We likewise hold that plaintiff here is not entitled to a lien on the buildings.

It was also argued that the court commited error inasmuch as the lien was filed out of time. However, we see no merit in this portion of the appeal since the record is clear that even at the time the action was brought the work had not been completed.

Reversed.

McINTYRE, Chief Justice (dissenting).

The only fault I find with the opinion of Justice Parker is that it does not give sufficient recognition to the provisions of § 29–6, W.S.1957. The section reads:

"The lien for the things or materials furnished or work and labor performed shall attach to the building, erection or improvements for which they were furnished, or the work and labor was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which said building, or erection, improvements or machinery have been erected or put, and any person enforcing such lien may have such building, erection or improvements sold under execution, and the purchaser thereof may remove the same within a reasonable time thereafter."

It is clear from the foregoing section that the contractor can claim no lien against the land. If a completely new building were constructed, there would be no problem. The case of Schulenberg v. Hayden, 146 Mo. 583, 48 S.W. 472, 474, cited in the majority opinion, would apply and the contractor could remove the building without depreciating the security of a prior lien holder.

But what is the situation where only repairs and improvements are added to existing structures? Section 29–6 says the contractor's lien shall attach to the "building, erection or improvements" in preference to prior liens. It also says the contractor may have such "building, erection or improvements" sold under execution and the purchaser may remove the same.

The plaintiff should, if practical to do so, be able to remove the improvements added by him. If such removal is not

---

shall attach to the building, erection or improvements for which they were furnished, or the work and labor was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which said building, or erection, improvements or machinery have been erected

or put, and any person enforcing such lien may have such building, erection or improvements sold under execution, and the purchaser thereof may remove the same within a reasonable time thereafter."

practical, there should be some kind of balancing of equity.

The record discloses that plaintiff actually did plead a cause of action based on unjust enrichment. The findings and holdings of the trial court were such, however, that it was not necessary to pass on that cause of action.

If we reverse the judgment of the district court, which held the plaintiff-contractor had a lien, then we should remand the case for trial on the issue of unjust enrichment.