## HAWKINS v. FAUBEL.

Opinion delivered October 6, 1930.

*L. P. Biggs, O. M. Young, Beaumont & Beaumont, Floyd Sharp, John A. Vick* and *Hogue & Burney,* for appellant.

*H. M. Jacoway* and *Lee Miles,* for appellee.

SMITH, J. L. M. Hawkins, doing business as the Hawkins Lumber Company, brought this suit to enforce a materialman's lien against certain property in the city of Little Rock owned by appellee John Faubel, and certain other persons filed interventions in that suit in which they sought to enforce liens upon the same property as mechanics or materialmen.

The facts out of which the litigation arose, as we find them to be—and there is but little conflict in the testimony—are as follows: John Faubel owned a vacant building in the city of Little Rock. Neal Brasher and H. V. Bennett, who had organized a corporation known as the Mid-South Finance & Investment Company, de-

sired to open what they called a night club, and had caused plans adapted to this business to be prepared by an architect. A lease contract was made for the Faubel property, beginning July 1, 1929, and extending for five years, at the rental of $250 per month, to be paid monthly in advance, and it was found necessary to alter the architect's plans to adjust them to the Faubel property. A brother of Faubel, who represented him in the negotiations leading up to the execution of the lease, testified that Bennett represented to him that certain alterations and repairs would be required to adapt the building to the use proposed, and that the Mid-South Finance & Investment Company, hereinafter referred to as the company, had $18,000 in cash to be used for that purpose and to launch and establish the business upon which the company proposed to enter.

A written contract of lease was executed, which contained the following clause: ''Lessee agrees to place said premises in a good state of repair and to overhaul the same at a cost including equipment of not less than twelve thousand dollars ($12,000), the same to be done in keeping and according to plans furnished by Ray Burks,'' (the architect).

Faubel's brother did not inquire what part of the $12,000 would be expended for repairs, as distinguished from club equipment, and the purpose of the clause was to consent to the repairs being made.

None of the mechanics or materialmen had any communication with Faubel, the owner, or with his brother, and all the work was completed and all the materials furnished not later than October 20, 1929, and the lease was not placed of record until October 29, 1929.

The court below held that no right to a lien was shown against Faubel's interest in the property, but that the plaintiff and the interveners were entitled to a lien against the leasehold estate of the company, and, after rendering judgment against the company for the amounts of the respective demands, it was ordered that the com-

pany's leasehold interest be foreclosed and sold if those demands were not paid within the time there limited, and the lien claimants have appealed, and in their brief they state the issue to be whether they are entitled to liens upon the fee interest of Faubel under the lease from him to the company.

It is insisted that the right to have these liens declared is established by the opinions of this court in the cases of *Whitcomb* v. *Gans,* 90 Ark. 469, 119 S. W. 676, and *Wildwood Amusement Company* v. *Stout Lbr. Co.,* 178 Ark. 977, 12 S. W. (2d) 911.

We do not think so. In the Gans case the lease provided "said Mrs. Dunklin (the lessee) will make improvements and repairs on the premises costing not less than four hundred ($400) dollars, for which the said Mrs. Gans (the lessor) agrees to reimburse the said Mrs. Dunklin by allowance in rent at the rate of forty ($40) dollars per month for the first ten months of this agreement."

In construing this contract the court there said: "It will be observed that appellee (Gans) did not merely consent for Mrs. Dunklin to make improvements at her own expense and for her own enjoyment, but bound Mrs. Dunklin by the contract to make improvements to cost at least $400, and obligated herself to pay for same by crediting that amount on the rent. In other words, Mrs. Dunklin was to make the improvements and advance the money to pay for same, but was to be reimbursed out of the rents."

Under the contract as thus construed the court held that a lien existed for the value of the improvements made. But it was also there said: "We need not go so far as to hold that a lessor may make his property subject to lien merely by consenting for the lessee to make improvements."

The question there reserved is the very question now presented for decision.

The case of *Wildwood Amusement Co.* v. *Stout Lbr. Co., supra,* did not decide the question reserved in the case of *Whitcomb* v. *Gans.* In the Wildwood Amusement Company case the facts were that the amusement company had acquired a lease by assignment, which it contracted to sell to Stell & Chapman. The contract of sale obligated the purchasers to erect a dancing pavilion, and to make certain expenditures for other purposes. It was there said: "The title to the whole property was retained in appellant, including all improvements to be erected on the lease by Stell & Chapman, the effect of which was to constitute Stell & Chapman, the agents of the Wildwood Amusement Company for this purpose, as it required them to make these improvements to their property, and which was to remain their property until all the purchase money notes had been paid in full. Under these conditions we think it would have been no different had the Wildwood Amusement Company itself erected these improvements before the sale and required the purchasers to pay therefor in the contract of sale. This court has held that, where property is leased under a contract with the lessee to make certain improvements, to be paid by the lessor, the property itself is subject to the lien for materials furnished," (Citing *Whitcomb* v. *Gans, supra,* and other Arkansas cases).

Respective counsel have cited and reviewed a number of cases from other jurisdictions, under the apparent authority of some of which the appellant lien claimants would be entitled to a lien, while other cases cited are to the contrary effect. We do not review or attempt to distinguish these cases, as all of them turn upon the construction of the various statutes under which the liens were claimed.

After reviewing a number of these cases counsel for appellants say that "we agree that in this State the lien is effective only when the contract is made with the owner, or his agent, mentioned in § 6096, C. & M. Digest," the statute under which the right to a lien is claimed.

We think counsel are correct in this admission, and that it is decisive of this case. There was no contract between the lien claimants and Faulbel, or his agent, whereby the demands here sued for were incurred. Faubel's brother testified that he made no inquiry as to the part of the $12,000 which would be expended for repairs, or the part to be expended for club equipment, and the lease is silent on this subject. Its provisions left the lessees free to distribute the expenditures between the two items as they pleased, if; indeed, they made the expenditures at all, and there was no provision that even the portion spent for repairs should be repaid by deductions from the rent, as was made in the case of *Whitcomb* v. *Gans, supra*. Faubel's brother testified that the repairs themselves contemplated by the architect's plans served only to adapt the building to the peculiar use which the company intended to make of it, and that when the company defaulted in the payment of the rent, as it did do, a considerable expenditure would have been necessary to restore the building so as to adapt it to ordinary uses.

We now decide the question reserved in the case of *Whitcomb* v. *Gans, supra,* and we hold that the lessor does not make his property subject to lien merely by consenting for the lessee to make improvements. This view accords with the reasons upon which the decisions were based in the following cases: *Langston* v. *Matthews & Lawton,* 117 Ark. 628, 173 S. W. 397; *Daly* v. *Arkadelphia Milling Co.,* 126 Ark. 305, 189 S. W. 1053; *Davis* v. *Osceola Lbr. Co.,* 168 Ark. 584, 270 S. W. 960; *Fine* v. *Dyke Bros.,* 175 Ark. 572, 300 S. W. 375, 58 A. L. R. 907; *Morrilton Lbr. Co.* v. *Groom,* 176 Ark. 520, 3 S. W. (2d) 293. This view also accords with the general rule where there is no statute making the owner liable who merely consents that the improvement shall be made: Sections 1277, 1278 and 1280, Jones on Liens (3d ed.); *Morrow* v. *Merritt,* 16 Utah 412, 52 Pac. 667; *Schrage* v. *Miller,* 44 Nev. 818, 62 N. W. 1091; *Knapp* v. *Brown,* 45 N. Y. 207.

The decree of the court below is correct, and it is therefore affirmed.