CRUMP & RODGERS Co. *v.* SOUTHERN IMPLEMENT Co., INC.

5-1608                                   316 S. W. 2d 121

Opinion delivered June 23, 1958.

[Rehearing denied October 6, 1958.]

*Daggett & Daggett,* for appellant.

*Smith & Smith, Charles B. Roscopf,* and *Burke, Moore & Burke,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a controversy between the mortgagees and a lien claimant under § 51-404 *et seq.* Ark. Stats. The mortgagees are Crump & Rodgers Company and Dabney Crump, the appellants; the lien claimant is Southern Implement Company, Inc., the appellee; and we will refer to the parties by the designations in this Court.

In 1953 O. T. Pickard purchased a John Deere cotton picking machine. Subsequently he mortgaged the machine to the Phillips National Bank, and the mortgage is now held by the appellants. In the cotton picking season of 1956 Pickard had appellee repair his machine on three different occasions. The total bill of the appellee for parts and labor amounted to $2,114.55, which Pickard failed to pay. Appellee filed lien notice on February 9, 1957 under § 51-409 Ark. Stats.; and then filed suit to enforce the lien claim. Judgment by default was rendered against Pickard; but appellants defended by alleging: that appellee was claiming under three separate and distinct repair contracts; and that the lien was in effect for only the last repair job, which amounted to $110.96. They tendered this amount in Court. Trial resulted in a decree for a lien to appellee

for the full amount, and this appeal ensued, presenting the points now to be discussed.

I. *The Rule of Werbe v. Holt.* When the appellee, as plaintiff, rested its case, the appellants filed motion for judgment under Act No. 470 of 1949, now found in § 27-1729 Ark. Stats. The Trial Court tested the sufficiency of the plaintiff's case in accordance with our holding in *Werbe v. Holt,* 217 Ark. 198, 229 S. W. 2d 225, and held that the appellee had made a *prima facie* case. The appellants stood on their motion and judgment final was rendered for the plaintiff (appellee). So, under the rule of *Werbe v. Holt,* we give the appellee's (plaintiff's) case its strongest probative force; and if there be any substantial evidence to support the decree of the Chancery Court, then we must affirm.

II. *The Lien Account.* The account filed by appellee for $2,114.55 shows that appellee either furnished parts or performed labor on the cotton picking machine on thirty-four different days, beginning on September 8, 1956 and concluding on November 28, 1956. The lien notice under § 51-409 Ark. Stats. was filed on February 9, 1957, which was within the 90-day period from November 28, 1956, but more than 90 days from September 8, 1956. Appellee says that the account was a "running account" and that the 90-day period dates from the last item furnished, citing some of our cases on the mechanics' and materialmen's lien statute (§ 51-601 *et seq.* Ark. Stats.), such as: *Geisreiter v. Standard Lbr. Co.,* 187 Ark. 893, 63 S. W. 2d 347; *Whitener v. Purifoy,* 177 Ark. 39, 5 S. W. 2d 724; *Ferguson Lbr. Co. v. Scriber,* 162 Ark. 349, 258 S. W. 353; and *Kizer Lbr. Co. v. Mosely,* 56 Ark. 544, 20 S. W. 409.

The rule of the cited cases would be applicable if there had been either (a) a definite contract between the parties covering all three of the repair jobs; or (b) the repairs had been under a running or open account for the completion of the work. This is all explained in *Streuli v. Wallin etc. Co.,* 227 Ark. 522, 302 S. W. 2d 522, wherein, in speaking of the "running

account", we quoted the language of Mr. Justice BATTLE in *Kizer Lbr. Co.* v. *Mosely, supra*:

" ' . . . If, however, he began to furnish "without any specific agreement as to the amount to be furnished", or the time within which they were to be furnished, and there was a *"reasonable expectation that further material" would "be required of him"*, and he was "afterwards called upon, from time to time, to furnish the same", he should file it within 90 days after the last item was delivered . . .' "

The evidence in the case at bar entirely fails to disclose the existence of either of the above requirements. There was never a definite contract between the parties for repairs over any period of time other than the immediate work order involved; and there was never any "reasonable expectation that further material would be required". As to the definite contract matter, appellee's managing officer, Mr. J. S. Crow, frankly admitted that Pickard and the appellee had no contract or agreement of any kind whereby Pickard expected, or appellee agreed, to do all of the repair work that might be required on the cotton picking machine during the season of 1956, or any other period of time. Mr. Crow testified:

"Q. And if anything happened to it you didn't know whether he would come back to you or not, or would go to another implement company?

A. That would have been his privilege.

Q. That would have been his privilege?

A. Yes."

We come, then, to the matter of "reasonable expectation that further material would be required", which is the only other basis on which the appellants can succeed. There were three work orders for repairs on the cotton picking machine. The first work order (No. 1823) was completed on August 24, 1956, and amounted to a total of $842.64. When this work was complet-

ed Pickard put the machine back into use and there is no evidence indicating that Pickard and appellee had any plans or agreement for any subsequent or further repairs. The second work order (No. 1936) was completed on September 28, 1956 and amounted to a total of $706.35; and when that work order was completed Pickard put the machine back into use and there is no evidence that Pickard or appellee had any plans or agreement for any subsequent or further repairs. Pickard bought some parts for the cotton picking machine which he installed himself; and then on November 28, 1956 there was the third and final repair job (work order No. 2278) for a total of $110.96. Appellee's witness admitted that this third repair order indicated that the last work order on the cotton picking machine was because "it looks like from the parts list it hit something and bent a bar".

It is, therefore, clear that there were three separate and distinct repair jobs, each complete in itself, and that the 90-day period, for filing the lien claim under § 51-409 Ark. Stats., ran from the *completion of each repair job*. In other words, there were three separate repair contracts, and not one contract[1] covering the entire period. The case of *Reed* v. *Horton,* 135 Minn. 17, 159 N. W. 1080, involved a claimed lien on an automobile for a series of repairs, adjustments and parts furnished to the car; and the Minnesota Supreme Court held that each repair job was a separate job, saying: "We think the Trial Court held correctly, that when the repairs for such a vehicle are furnished at different times and constitute separate and distinct transactions, the right to claim a lien expires . . . sixty days[2] after each transaction. It cannot be conceived that the Legislature intended lien claims against motor vehicles to have a

---

[1] General statements, as to the distinction between a separate contract and a continuing transaction, may be found in 57 C.J.S. 661, "Mechanics' Liens", § 144; 36 Am. Jur. 97, "Mechanics' Liens" § 140; and Blashfield Encyclopedia of Automobile Law and Practice, Permanent Edition, § 5206.

[2] The Minnesota law is sixty days; the Arkansas law is ninety days.

floating existence for long periods of time without constructive notice thereof being given."

The case of *Reconstruction Finance Corp.* v. *Kern-Limerick*, 192 Fed. 2d 978, when thoroughly analyzed, is not contrary to the Minnesota holding, because in the said Kern-Limerick case Judge Gardner, speaking for the U. S. Court of Appeals for the Eighth Circuit, was careful to point out: "In September, 1945 Shores entered into a contract with appellee to maintain and repair the equipment for use on the Sweet Home job, and from the date of this contract until Shores filed his petition in bankruptcy on July 3, 1946, appellee furnished materials and performed labor on the equipment." Judge Gardner pointed out, that there was a contract for the continuing performance of repairs during the entire Sweet Home job; and because of the proof of such contract, the lien claimant had ninety days from the date of the last furnishing in which to file his lien claim.

As we have previously said, in the case at bar there was no contract looking toward repair and maintenance during any period; and so we conclude that each repair job was a separate contract. Under such view — and it is the only one that the evidence supports — the amount covered by the lien notice was $110.96 for the third work order (No. 2278), and the Chancery Court should have so held, because — even under the rule of *Werbe* v. *Holt* — there is no evidence to the contrary. The personal judgment against Pickard is left unaffected by our holding.

III. *The Mortgages Held By The Appellants.* The appellee says: "The Appellants, Crump & Rodgers Company and Dabney Crump, having utterly failed to discharge the burden of proof as to their respective mortgages, have no standing in the court below and in this court on appeal". This point is without merit. The appellee alleged in the complaint that the appellants ". . . claim to have some interest in and to said equipment". Appellants attached to their answer

a copy of the note and mortgage originally executed by Pickard to Phillips National Bank and assigned by the Bank to the appellants. Then Mr. Minton, one of the appellee's officers, made answers on cross-examination as follows:

"Q. Mr. Minton, did you know that this cotton picker was mortgaged at the time that you did this work on it?

A. I understood he owed on the cotton picker; yes.

Q. Did you know it was mortgaged to the Helena National Bank?

A. Phillips National Bank. I understood it was Phillips National Bank.

Q. Well, to Phillips National Bank. And you also knew that Mr. Crump and Rodgers had a mortgage on it?

A. Well, without a doubt. They take that in the furnish . . .

Q. Did you have any definite knowledge that there was a chattel mortgage outstanding to the Phillips National Bank?

A. Pickard has told me that.

Q. Mr. Pickard had told you that?

A. Yes.

Q. Mr. Pickard had told you that at the time the service was rendered and the materials furnished?

A. Yes."

Thus, appellee's own witness admitted that the appellants held a mortgage on the cotton picking machine.

## CONCLUSION

The decree is reversed and the cause is remanded, with directions to enter a decree awarding appellee the $110.96 deposited in the Court; but to discharge the cotton picking machine from any lien claimed by appellee. All costs accruing after the date of the aforementioned court deposit are taxed against the appellee.