Vance JONES, Director, DEPARTMENT OF FINANCE AND ADMINISTRATION, State of Arkansas *v.* CARTER CONSTRUCTION COMPANY, INC.

79-39                                      583 S.W. 2d 63

Opinion delivered July 9, 1979
(In Banc)

*Robert G. Brockmann, Jack East, III, Barry E. Coplin, H. Thomas Clark,* and *Timothy J. Leathers,* by: *Joseph V. Svoboda,* for appellant.

*Ted Boswell,* P.A., by: *David E. Smith,* for appellee.

JOHN A. FOGLEMAN, Justice. Pursuant to a merger agreement entered into on December 1, 1974, the appellee, Carter Construction Company, Inc., acquired all of the assets of Carter and Cleaver Construction Company, Inc., on January 1, 1975. Both corporations were engaged in the construction business and therefore the assets acquired by the appellee, the surviving corporation, consisted primarily of heavy machinery and equipment. Prior to the merger, Carter and Cleaver had incurred a net operating loss of $95,182.80, which, had there been no merger, it would have been entitled

to claim as a deduction in computing its net income for its 1975 Arkansas income tax return. Under the authority of Ark. Stat. Ann. § 84-2016 (l) (Supp. 1977), the appellee claimed this net operating loss carryover as a deduction from its net income.

Agents of the appellant, the Director of the Department of Finance and Administration, audited the 1975 income tax return filed by the appellee, disallowed the net operating loss deduction and assessed the appellee for additional tax due. The appellee appealed this determination and a hearing was held before the Arkansas Revenue Department Hearing Board, which sustained the disallowance of the appellee's deduction. The appellee paid the deficiency under protest.

The appellee timely filed a complaint in the Chancery Court of Pulaski County to recover the amount of tax paid under protest, pursuant to Ark. Stat. Ann. § 84-2038 (Repl. 1960). The parties stipulated that the only issue for adjudication was whether appellee's use of the assets acquired in the merger met the requirements of § 84-2016 (l) (3) (B), which governs the deduction of net operating losses incurred by acquired corporations. The relevant portion of the statute reads as follows:

> . . . The Carryover losses will be allowed only in those cases where the assets of the corporation going out of existence earn sufficient profits in the post merger period to absorb the carryover losses claimed by the surviving corporation.

The merger met the requirements of that subsection.

Isaac Freeman Carter, Jr., president and chief executive officer of the appellee, testified that the equipment acquired in the merger was used in the day to day operations of Carter Construction Company, Inc., the records kept by the company did not reflect whether a particular piece of equipment had been utilized on a particular job and the appellee had not acquired any additional equipment since the merger. Carter stated that the equipment acquired in the merger was used on construction projects in 1975 and thereafter, "the same as equipment which was owned prior to the merger." During re-

cross examination, Carter said it would not be possible to document the amount of money earned by each piece of equipment.

The accountant for the appellee during 1974 and 1975, Harry C. Keaton, testified that the assets acquired in the merger represented 28.67 percent of the total assets owned by Carter Construction Company after the merger. Keaton arrived at this figure by dividing the original cost of the equipment which was transferred from Carter and Cleaver by the original cost of all the equipment owned by the appellee after the merger. Keaton said that by computing 28.67 percent of the total profit earned by the appellee in 1975, he was able to determine the pro rata share of profits which was attributable to the equipment obtained in the merger. As a result of this computation, Keaton determined that the pro rata share attributable to this equipment was $151,500.54. Keaton explained the use of this method, which he felt was an acceptable method, by looking to Ark. Stat. Ann. § 84-2065 (Repl. 1977), which is a section of the chapter dealing with the apportionment, for tax purposes, of the income of a company which transacts business in several states. The cost of property located within the state is one of the three factors used to determine the amount of income to be apportioned in each state and § 84-2065 provides in part that: "[p]roperty owned by the taxpayer is valued at its original cost." Keaton stated that this was probably the only method "we could come up with" to allocate the profits because the cost of equipment is the principal item on any construction contract. He thought it was an acceptable method because it was the only method available.

On cross-examination, Keaton admitted that the percentage figures could be vastly different if the book value (original cost less accumulated depreciation) was used rather than original cost and some of the equipment was old and had been depreciated greatly, and therefore had a very low book value. Using the book value of the equipment, Keaton arrived at a figure of 15.1 percent as the percentage the Carter and Cleaver equipment comprised of all the equipment owned by the appellee after the merger. He said that there was no way to determine whether an older piece of equipment would generate the same amount of income as a

newer piece of equipment, but that he thought that two comparable pieces of equipment would generate the same amount. Keaton said income, payroll and direct labor cost were some additional accepted procedures which could have been used to determine the percentage represented by the acquired equipment, but that such information was not available. He also stated that segregating the records would present an enormous accounting problem because the businesses had been operated as a single unit for three months when the controlling statute on a net operating loss carryover on merger was amended to its present form, and made effective January 1, 1975.

At the conclusion of Keaton's testimony, the appellee rested its case and the appellant moved that the case be dismissed due to the insufficiency of the evidence, pursuant to Ark. Stat. Ann. § 27-1729 (Repl. 1962). The attorney for the appellee then stated that it was the appellee's position that the testimony presented was sufficient to support a judgment in its favor and that the appellant had offered no evidence to rebut that offered by the appellee, and asked that the motion be denied and judgment entered in favor of the appellee for the stipulated amount. The court reminded the attorney for the appellee that if the motion were denied, the appellant might wish to offer some testimony at which time the attorney for the appellant said: "I stand on the Motion, Your Honor." The trial judge then denied the motion of the appellant and entered judgment in favor of the appellee for the stipulated amount of $5,710.97, plus interest.

The final paragraph of § 27-1729 provides:

> * * * If the motion be overruled, then the party filing the motion may save exceptions and proceed to take proof or elect to stand on his motion, and appeal to the Supreme Court. In the event the motion is overruled and the party making it elects to stand on the motion and appeal to the Supreme Court and the Lower Court's action in overruling the motion be affirmed, it shall constitute a final judgment in the case.

This court was first called upon to deal with this statute in *Werbe v. Holt,* 217 Ark. 198, 229 S.W. 2d 225. In that case,

a motion to dismiss had been sustained by the trial court and the plaintiff appealed. The appellant contended that it was only necessary that a plaintiff establish a *prima facie* case in order to defeat the motion, while the appellee contended that the judge was to weigh the evidence in ruling on the motion. In reversing the trial court, we said:

> * * * By the overwhelming weight of authority it is the court's duty, in passing upon either a demurrer to the evidence [now referred to as a "Motion to dismiss for insufficiency of the evidence" in Arkansas practice] or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence when so considered fails to make a *prima facie* case. * * *

In *Crump & Rodgers Co.* v. *Southern Implement Co., Inc.*, 229 Ark. 285, 316 S.W. 2d 121, it was said: "So, under the rule of *Werbe* v. *Holt,* we give the appellee's (plaintiff's) case its strongest probative force; and if there be any substantial evidence to support the decree of the Chancery Court, then we must affirm."

Even though appellee had the burden of proving clearly that he was entitled to the exemption, when we apply the above principles to the facts of this case and give the evidence its strongest probative force in favor of the appellee, we cannot say that there is no substantial evidence to support the chancellor's decision and affirm his decree. We do not view the matter as we would had appellant rested without offering any evidence after his motion was denied. The chancellor was not permitted to weigh the evidence when the appellant chose to stand on his motion. Carter had testified that: the acquired equipment was used in the daily operations of the appellee; it would be impractical, if not impossible, to maintain records of which piece of equipment worked on which jobs; and it would be impossible to determine the amount of income each individual piece of equipment had earned. Keaton testified that: he had used the only acceptable method available to him to determine the pro rata share of income earned by the acquired equipment; the use of the original cost of property rather than the book value was required by the Arkansas

Statutes in the division and apportionment of income earned by multi-state corporations; and the information necessary to use one of the other methods to arrive at a pro rata share attributable to the appellee was not available to Keaton. In light of the foregoing testimony, we find substantial evidence to support the chancellor's decision that the appellee had presented a *prima facie* case to prove that the equipment acquired by the appellee in the merger with Carter and Cleaver had generated income of $151,500.54, an amount sufficient to absorb the carryover net operating loss of $95,182.80 claimed by the appellee and therefore affirm the judgment.

HARRIS, C.J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. The statute provides:

> In the case of the acquisition of assets of one domestic corporation by another domestic corporation, the acquiring corporation shall succeed to and take into account any net operating loss carryover that the acquired corporation could have claimed had it not been acquired, subject to the following conditions and limitations:
>
> A. The net operating loss may not be carried forward to a taxable year which ends more than three years after the taxable year in which the loss occurred.
>
> B. The net operating loss may be claimed only when the ownership of both the acquired and acquiring corporations is substantially the same; that is, where not less than eighty per cent (80%) of the voting stock of each corporation owned by the same person or persons. *The carryover losses will be allowed only in those cases where assets of the corporation going out of existence earn sufficient profits in the post-merger period to absorb the carryover losses claimed by the surviving corporation.* (My emphasis.)

I do not think the evidence submitted by appellee satisfied the condition which I have italicized. Carter testified that the assets acquired from Carter and Cleaver Company were used daily in the operation of appellee's business and used on construction jobs in 1975. However, on cross-

examination, it developed that there was no distinction made as to how much of the Carter-Cleaver assets were used after the merger; further, there was no knowledge of what equipment was used on a particular job. There were no separate records or documents reflecting how the assets were used by appellee prior or subsequent to the merger. Also, it would be impossible to determine how much money had been earned by the Carter-Cleaver assets, and how much money was produced by each piece of that equipment.

Appellee's accountant testified as to the method he used to allocate the profits generated by the assets acquired by appellee from Carter and Cleaver Construction Company, and he said this method was acceptable because it was the only method available and because the state used the same basis in allocating profit between in-state and out-of-state income. However, he agreed that there were other acceptable accounting procedures that could have been used, but stated, "We did not have that information," and he added that it would have been an enormous accounting problem to endeavor to segregate the records, and accordingly, would not have been practical.

I simply say that, irrespective of the reasons given, appellee did not demonstrate its entitlement to a tax deduction under the statute, and, of course, the burden was on appellee to clearly establish same.

I, therefore, respectfully dissent.